STATE OF CONNECTICUT *v.* DAVID JOYCE
(AC 15603)

O'Connell, Schaller and Hennessy, Js.

Argued November 7, 1996—officially released June 10, 1997

*Kent Drager*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's

attorney, and *John C. Smriga*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals[1] from the judgment of conviction, following a jury trial, of felony murder in violation of General Statutes § 53a-54c, attempted robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3), robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and criminal possession of a pistol in violation of General Statutes § 53a-217 (a). The jury acquitted the defendant of attempted murder and assault in the third degree.

The defendant claims that the trial court improperly (1) admitted evidence of prior arrests and other misconduct at the suppression hearing, (2) restricted the cross-examination of one police officer and the direct examination of another officer, (3) replied to jury questions, (4) allowed the state to inform the jury of the precise underlying crime in the criminal possession of a firearm charge, (5) denied his request to dismiss his trial counsel, and (6) denied his motion for a new trial. We affirm the judgment of the trial court.

The record discloses the following facts. On August 1, 1991, the defendant entered a small grocery store in Bridgeport. As he approached the counter, he grabbed a female customer, held a knife to her throat and threatened to kill her if the clerk, John Hanna, did not give him money. Nicholas Hanna, the store's owner, was sitting on a crate behind John near the cash register as the defendant jumped over the counter to take money from the register. Nicholas grabbed a gun he kept nearby and shot the defendant once in the head. During

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

a struggle for the gun, the defendant shot Nicholas in the forehead, killing him. The defendant shot twice at John, missed him, and fled from the store. Outside the store, the defendant pulled a woman, Joyce Castro, from her car and stole her purse and car.

The defendant was later apprehended in Hartford after the police were told about a shooting victim in an apartment on Cabot Street. The Hartford police located the stolen vehicle three blocks from the Cabot Street address and notified the Bridgeport police. Sergeant Glen Prentice of the Bridgeport police went to Hartford to investigate. On August 2, 1991, Prentice spoke to the defendant at a hospital in Hartford and arrested him on an outstanding warrant in an unrelated case. The defendant was returned to Bridgeport on the evening of August 2, 1991, and he asked to speak to Prentice. The defendant signed a written waiver of his Miranda rights and gave Prentice a written statement. Prentice again questioned the defendant on August 3, 1991, and the defendant gave him a second written statement. On August 4, 1991, Prentice sought to question the defendant again, but he refused to speak to him.

I

SUPPRESSION HEARING

The defendant filed a motion to suppress any statements he made to the police on the ground that they violated his federal and state constitutional rights. The motion is general in form and does not refer to specific statements. Our examination of the record indicates, however, that it was apparently intended to suppress the two statements made to Prentice. The defendant claims that the trial court improperly admitted evidence of other arrests and misconduct at the suppression hearing. Furthermore, the defendant claims that the denial

of the motion to suppress was based on the impeachment of the defendant by his prior convictions.

The defendant's principal claim at the suppression hearing was based on his prior assault by a Bridgeport police officer, Joseph Procaccini. In that assault, Procaccini struck the defendant while the defendant was in handcuffs. As a result of his conduct, Procaccini was convicted in federal court and sent to prison. The defendant claimed that his statements to Prentice were not voluntary due to his fear of retaliation by Bridgeport police officers because of Procaccini's conviction.

The test for voluntariness of a confession is "whether an examination of all the circumstances shows that the conduct of [the] police was such as to overbear the defendant's will to resist and bring about a confession not freely self-determined." *State* v. *Perry*, 195 Conn. 505, 515–16, 488 A.2d 1256 (1985). The trial court permitted the state to introduce evidence of all of the defendant's prior arrests, as well as evidence concerning incidents occurring subsequent to the statements of August 2 and 3, 1991. These poststatement incidents included an October 1991 arrest for assaulting a police officer, a January 19, 1992 arrest for interfering with a police officer, and a January 19, 1992 arrest for contempt of court.[2] The poststatement incidents also included misconduct reports for fighting with correction officers during his pretrial confinement. The state argued that it was necessary for the court to consider the defendant's prior experience with the police, as well as the defendant's conduct after he made the statements to Prentice, to evaluate the defendant's ability to withstand pressure to overbear his will.

After an evidentiary hearing, the trial court made the following findings: "[The defendant] is powerfully built

[2] Because the defendant was continuously in custody subsequent to his arrest on August 1, 1991, these arrests were presumably on warrants based on previous allegations of previous criminal conduct.

with an exceptionally large neck and upper body and with well-defined muscular arms and biceps. He appears to be a very powerful man. By contrast, quite frankly, Sergeant Prentice appeared to be relatively puny. Prentice was not armed during the time they were alone together at the detective bureau interrogation room, and the defendant was not restrained at that time. The defendant certainly appears to have no fear of authority. From 1979 to 1992, he had a great number of significant arrests and spent a great deal of time in jail or on parole. It is obvious that he has received *Miranda* warnings many times during this period and he is familiar with police and court procedures. His familiarity with *Miranda* warnings is especially clear since they are not just given by arresting and interrogating officers but also by the courts. He has had a number of convictions of various degrees of robbery and larceny and the court notes that these are crimes involving honesty and takes special note of them regarding the issue of credibility. There are also a significant number of arrests for violent acts, much of which was directed at police officers and correction officers, even after the Procaccini incident. The defendant is now, apparently, in solitary confinement for striking a correction officer and has had other altercations with correction officers. As a matter of fact, it is noteworthy that only twelve days after the incident with Officer Procaccini, the defendant was arrested again. The Procaccini incident obviously had little or no deterrent effect. Moreover, it would appear that the defendant is easily frustrated. He made this clear by swearing and cursing at the court when he did not like a court ruling during the voir dire, thus forcing the court to remove him from the courtroom. Again he showed no fear of authority, let alone respect. He was not afraid of the court and by his own admission had no fear of being held in contempt, something which his record indicates happened to him before."

The trial court further found that "the defendant has no real fear of authority. It does not find that he is afraid of receiving physical injuries, something he appears to handle and tolerate with surprising ease. Moreover, the court does not find that he was afraid of Prentice. Quite the contrary, he wanted to talk to Prentice and he asked to do so. He was alone for a considerable period of time with the much smaller Prentice, who was unarmed and the defendant was not restrained. Prentice did not strike him during the interview in fact he gave him food."

Finally, the trial court concluded that "[i]t is not credible that this exceptionally powerful man gave a false involuntary statement just to get out of the interview room so that he could lie down and rest when all he had to do is stop talking."

The burden is on the state to prove by a preponderance of the evidence that the statements were voluntary. *State* v. *Smith*, 200 Conn. 465, 477, 512 A.2d 189 (1986). In analyzing an issue of voluntariness, our usual deference to the trial court's fact-finding is qualified by the necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. Id., 478.

Having examined the record and applied the appropriate standard of review, we conclude that there was substantial evidence to support the trial court's finding that the defendant's will was not overcome by the police and therefore that his statements were voluntary. Admission of the challenged evidence of the defendant's prior arrests and misconduct was necessary for the trial court fairly to consider the defendant's ability to withstand pressure to overbear his will.

## II

## RESTRICTION OF CROSS-EXAMINATION AND DIRECT EXAMINATION

The defendant next claims that the trial court improperly restricted his cross-examination of Prentice and direct examination of Officer David Daniels of the Bridgeport police concerning bias against the defendant that may have arisen as a result of the defendant's 1990 assault by Procaccini. The defendant claims that the trial court's restriction of his cross-examination violated his sixth amendment constitutional right of confrontation. The thrust of the defendant's claim is that the Bridgeport police officers were aware of and resented the defendant's complaint against Procaccini, and, therefore, Prentice's testimony was biased and motivated by this resentment.

### A

In an offer of proof, outside the jury's presence, the defendant examined Prentice concerning his knowledge of the Procaccini assault and conviction. The defendant's counsel also questioned Prentice about whether he knew of the defendant's involvement in the incident. The trial court ruled that it would not permit the defendant to cross-examine Prentice about his knowledge of the Procaccini incident for purposes of impeachment based on bias or motive. The trial court concluded that the proposed cross-examination was not relevant and was a collateral issue that would divert the trial from material issues.

The trial court has wide discretion to determine relevancy of evidence. *State* v. *Fritz*, 204 Conn. 156, 167, 527 A.2d 1157 (1987). It is true that the scope and extent of cross-examination generally rest within the sound discretion of the trial court. *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). "This discretion arises,

however, only after the defendant has been permitted cross-examination and impeachment of a witness sufficient to satisfy the sixth amendment." *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993). "[A]n important function of cross-examination is the exposure to a witness' motivation in testifying." Id., 249, citing *Green* v. *McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). "Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." *State* v. *Colton*, supra, 249.

In the present case, the trial court completely denied the defendant's right to cross-examine Prentice on the issue of bias concerning the Procaccini incident and did not merely limit the extent of the cross-examination. The trial court's discretion, therefore, did not come into play. *State* v. *Milum*, 197 Conn. 602, 610, 500 A.2d 555 (1985). We conclude that the trial court improperly determined that the evidence of bias or interest was collateral. Evidence tending to show bias is never collateral or irrelevant. Id. Prentice's possible bias against the defendant was clearly relevant and was a matter for the jury to consider when it evaluated Prentice's credibility.

B

During its case-in-chief, the defendant proposed to examine Daniels to impeach Prentice's testimony. In an offer of proof, Daniels testified that he and Prentice were members of the fifth platoon, which shared shifts and time off. Daniels testified that the fifth platoon was like a family and socialized together. Daniels testified that because he had reported Procaccini's misconduct against the defendant, he was shunned by the other members of the platoon, including Prentice. Daniels testified that the platoon's resentment flared when the

defendant was charged in another murder case in July, 1991.

The defendant argues that Daniels' testimony was necessary to show that Prentice had strong feelings about the Procaccini incident and was likely to have known of the defendant's involvement before he investigated the present case and took the defendant's statements. The trial court disallowed the examination of Daniels on this issue, concluding that Prentice's bias against Daniels did not mean that Prentice was biased against the defendant.

Because bias or interest is not collateral, extrinsic evidence may also be introduced. *State* v. *Colton*, supra, 227 Conn. 231, citing *State* v. *Shipman*, 195 Conn. 160, 163, 486 A.2d 1130 (1985). The trial court improperly restricted the defendant's right to show Prentice's bias through the direct examination of Daniels.

C

We next consider whether the trial court's improper exclusion of evidence pertaining to Prentice's bias against the defendant requires a new trial. "Although the outright denial of a defendant's opportunity to impeach a witness for motive, bias and interest implicates the constitutional protection of the confrontation clause, such a denial is subject to harmless error analysis." *State* v. *Colton*, supra, 227 Conn. 253, citing *United States* v. *Anderson*, 881 F.2d 1128, 1139 (D.C. Cir. 1989); *State* v. *Santiago*, 224 Conn. 325, 332, 618 A.2d 32 (1992).

"Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted,

and, of course, the overall strength of the prosecution's case. . . ." (Internal quotation marks omitted.) *State v. Colton,* supra, 227 Conn. 254.

We next evaluate the importance of Prentice's testimony to the state's case. Prentice testified as to the defendant's statements, and to the steps involved in his investigation. Prentice's testimony was, however, cumulative and corroborative of the testimony of John Hanna, an eyewitness to the robbery and murder. In all, three eyewitnesses placed the defendant at the crime scene. Both Hanna's wife and brother testified that he was in the store, and John Hanna identified him as the killer. The defendant lied to the Hartford police upon his apprehension after stealing a car and driving to Hartford. Castro's pocketbook was found near where the defendant was apprehended in Hartford. A Hartford police officer also identified the defendant. Overall, the state had a strong case against the defendant. Accordingly, we conclude that the trial court's limitation of Prentice's impeachment for bias was harmless beyond a reasonable doubt and does not warrant a new trial.

## III

## JURY QUESTIONS

The defendant does not attack the main charge on felony murder[3] but complains instead about the answers

---

[3] The court charged the jury on felony murder as follows: "In furtherance of an attempted robbery means the killing must in some way be causally connected to or as a result of the attempted robbery, or of flight from the robbery. It must be done to aid the attempted robbery in some way to further the purpose of the attempted robbery. If one commits an attempted robbery, the natural and probable consequences [of] which involve the contingency of taking a human life, that person is responsible for a homicide committed while acting in pursuance of or in furtherance of the attempted robbery or of flight therefrom, if he also caused the death during the course of the attempted robbery or of flight therefrom. The words 'in the course of the attempted robbery' limit the killing to one which occurs within the time frame and the actions which make up the attempted robbery or flight therefrom. In other words, in the course of the attempted robbery means

to two questions that the jury sent to the court during its deliberations.

## A

In its first question, the jury asked if it was sufficient to satisfy the causation element of felony murder if the victim was killed during the commission of the robbery or if the defendant physically had to cause the victim's death. The trial court responded that "to convict this defendant of felony murder, you must find that he caused [the victim's] death and in this case you must find proven beyond a reasonable doubt that the victim died as a result of being shot by the defendant." The effect of the response was that if the defendant caused the victim's death in the course of and in furtherance of the attempted robbery, then the defendant was guilty of felony murder if the other elements of that crime were also satisfied. We do not consider the court's response to this question in a vacuum, but look at it together with the main charge in which the court also clearly charged the jury that to convict the defendant it had to find that the defendant caused the victim's death by shooting him.

Appellate review is limited to determining whether "considering the substance of the charge, rather than the form of what was said, it is reasonably possible that the jury was misled." *State* v. *Zayas*, 195 Conn. 611, 617, 490 A.2d 68 (1995). The test to be applied to any part of the charge is whether the charge as a whole presents the case to the jury in such a manner that no injustice is perpetrated. *State* v. *Derrico*, 181 Conn. 151, 170, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). After reviewing the main charge

during any part of defendant's participation in the attempted robbery; thus, the shooting which allegedly caused [the victim's] death must have occurred somewhere within the time span of the occurrence of the facts which constitute the attempted robbery."

and the trial court's response to the jury question, we conclude that the jury could not have been misled about the causation element.

## B

The second jury question inquired whether self-defense applied even if the jury was convinced that the defendant was in the process of robbing the store and that the defendant had killed the victim. The court responded that the jury could not consider self-defense.

Self-defense, technically known as justification, is a recognized defense defined in our penal code, General Statutes §§ 53a-16 through 53a-23, and in our case law. *State* v. *Pearsall*, 44 Conn. App. 62, 66, 687 A.2d 1301 (1997); *State* v. *Panella*, 43 Conn. App. 76, 80, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996); *State* v. *Hester*, 28 Conn. App. 469, 472, 612 A.2d 120 (1992). A defendant is entitled to a theory of defense instruction as a matter of law when evidence of a legally recognized defense is placed before the jury. *State* v. *Rosado*, 178 Conn. 704, 708, 425 A.2d 108 (1979).

The defendant concedes that he has not established a statutory justification defense. He argues, nevertheless, that the trial court should have instructed the jury on some sort of layman's concept of self-defense. We are not persuaded. A claim that does not fall within one of the statutorily recognized defenses does not entitle a defendant to a theory of defense charge. Id., 707. Furthermore, a " 'trial court should submit no issue to the jury which is foreign to the facts in evidence or upon which no evidence was offered, and it should not submit to the jury considerations which find no support in the evidence.' " *State* v. *Campbell*, 225 Conn. 650, 659, 626 A.2d 287 (1993), quoting *State* v. *Cafone*, 164 Conn. 162, 168, 319 A.2d 381 (1972).

Because there was no evidence of self-defense, the trial court properly replied to the jury that it could not consider it.

## IV

## UNDERLYING FELONY CLAIM

The defendant's next claim involves count six of the amended information, which accused the defendant of criminal possession of a pistol or revolver.[4] General Statutes § 53a-217 (a) provides that a person who has been previously convicted of certain crimes, among them certain class B felonies, and is found in possession of a firearm, shall be guilty of a class D felony.[5] The defendant had previously been convicted of attempted robbery in the first degree, a class B felony.

The defendant contends that the trial court should have conducted a balancing test to determine whether the prejudice outweighed the probative value of informing the jury that the defendant had previously been convicted of one of the same crimes with which he is charged in the present case. Because the defendant

---

[4] Count six of the amended information states: "[The] state's attorney further accuses the said David Joyce with the crime of criminal possession of a pistol or revolver and charges that at the City of Bridgeport, Fairfield County, on the 1st day of August, 1991, between 7:13 p.m. and 7:30 p.m., outside 427 Wood Avenue, Bridgeport, the said David Joyce did possess a pistol, and the said David Joyce had previously been convicted of the crime of Attempted Robbery in the First Degree, in violation of Section 53a-217 (a) of the Connecticut General Statutes."

[5] General Statutes § 53a-217 (a) provides: "A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony, a class A felony, except a conviction under section 53a-196a, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196b, a class C felony, except a conviction under section 53a-87, 53a-152 or 53a-153, or a class D felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

was presently defending several charges involving robbery, he claims that evidence of a prior attempted robbery conviction prejudiced his defense and deprived him of a fair trial.

The defendant relies on cases that hold that "a high degree of prejudice is created" by informing the jurors of a prior conviction of the accused "[w]here the prior crime is quite similar to the offense being tried . . . ." *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982); *State* v. *Keiser*, 196 Conn. 122, 129–30, 491 A.2d 382 (1985); see also General Statutes § 52-145 (b).[6] These cases involve the proposed admittance of prior convictions for the purpose of impeachment. Impeachment of the defendant's credibility is not at issue here.

The defendant also relies on *State* v. *Jones*, 234 Conn. 324, 662 A.2d 1199 (1995), in which our Supreme Court held that where a defendant was charged with capital felony, the trial court should have bifurcated the trial. The Supreme Court concluded that evidence of the defendant's prior murder conviction should not have been admitted until after the jury determined whether he had committed the murder for which he was then on trial. The *Jones* court pointed out that, without mention of the prior conviction, the information alleges a cognizable offense, namely murder in violation of § 53a-54 (a), for the jury's consideration.

The Supreme Court enunciated that "[w]e agree that the structure of the capital felony statute, like that of the statute at issue in [*State* v. *Banta*, 15 Conn. App. 161, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988)], makes the former conviction an essential element of the crime charged. Compare General Statutes §§ 53a-54b (3) and 53a-40. The purpose of [the

---

[6] General Statutes § 52-145 (b) provides: "A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

capital felony statute], however, unlike the [criminal possession of a firearm] statute at issue in *Banta*, is not to define a new type of crime, but rather to enhance the sentence for an activity that is already classified as a crime. By designating the defendant's prior felony conviction as an 'element' of the crime of capital felony, the legislature has made the defendant eligible for the sentence not just of life in prison, but of death. Thus, the statute is much more analogous to the persistent offender statutes we discussed in *State* v. *Ferrone*, [96 Conn. 160, 172–76, 113 A. 452, (1921)], than to the crime of possession of a handgun by a felon discussed in *Banta*." *State* v. *Jones*, supra, 234 Conn. 339–40.

Section 53a-217 (a) is not a penalty enhancement statute. The defendant in *Banta*, as was the defendant in the present case, was charged with criminal possession of a pistol in violation of § 53a-217 (a). The *Banta* court reasoned that alleging possession of a firearm without reciting the prior criminal conviction would not set forth a cognizable criminal offense. *State* v. *Jones*, supra, 234 Conn. 339–40.

In addition, we note that during the trial it was stipulated that the defendant had previously been convicted of attempted first degree robbery and that the trial court twice in its jury instructions advised the jury that the prior conviction of robbery in the first degree was to be used only as proof of that element and was not to be considered by them for any other purpose.

We conclude that the defendant was not deprived of any rights by the manner in which he was charged in count six of the amended information.

## V

## DISMISSAL OF TRIAL COUNSEL

The defendant next claims that the trial court improperly denied his oral pro se motion to dismiss his court-

appointed counsel and to appoint new counsel. The motion was predicated on his dissatisfaction with his counsel's representation in two respects: (1) that counsel consented to the absence of the court reporter for one day during jury selection and (2) that counsel failed to object when the trial court left the bench on two or three occasions during voir dire in order to receive telephone calls. It was the judge's recollection that both counsel had agreed to his brief absence and also that both counsel had agreed that nothing had happened in his absence that required his presence. In addition, defense counsel consented to the absence of the court reporter for one day of jury selection. The record does not disclose whether the prospective jurors who were examined during the judge's absence or the court reporter's absence were selected to serve as members of the jury.

"While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 205 Conn. 673, 683, 535 A.2d 345 (1987). "A court need not permit the replacement of counsel upon a defendant's mere whimsical demand . . . ." (Internal quotation marks omitted.) *Sekou* v. *Warden*, 216 Conn. 678, 686–87, 583 A.2d 1277 (1990). "The trial court has discretion to decide whether the circumstances that occur during a particular trial warrant the appointment of a new counsel. . . . If supported by a substantial reason the request for substitution of counsel should be granted." (Citations omitted.) *State* v. *Lee*, 32 Conn. App. 84, 100, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). In view of the absence of any evidence

that the defendant's rights were in any way impaired by the defense counsel's agreement to the absence of the judge or court reporter, we are not persuaded that the trial court abused its discretion in denying the appointment of new counsel.

## VI

## MOTION FOR NEW TRIAL

The defendant argues, in his final claim, that the trial court improperly denied his motion for a new trial based on the judge's absence from the bench during portions of the voir dire. The facts relative to this claim are contained in part V of this opinion.

In *State* v. *Patterson*, 230 Conn. 385, 400, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996), our Supreme Court, acting under its supervisory powers, declared that thereafter the trial judge must be continuously present to oversee voir dire in a criminal case and this requirement could not be waived. Because *Patterson* was prospective and decided after the trial of the present case, the rule laid down therein does not control the present case. *State* v. *Cox*, 36 Conn. App. 463, 465–66, 652 A.2d 520 (1994).

*Patterson*, however, is not wholly irrelevant to the issue before us, because its analysis showed that prior to its effective date, a defendant could validly waive his right to the continual presence of the judge during voir dire. In *Patterson*, the Supreme Court found such a waiver where the defendant had been represented by counsel and had had prior personal experience with the criminal justice system. In the present case, the trial court found that the defendant's counsel had consented to the judge's absence. That fact supports a finding of a valid waiver of the judge's presence. *State* v. *Lopez*, 37 Conn. App. 509, 512–13, 657 A.2d 647, cert. denied, 234 Conn. 902, 660 A.2d 858 (1995).

The trial court did not abuse its discretion in denying the motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.