[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, David Joyce, was found guilty, on March 3, 1993, of felony murder in violation of § 53a-54c of the Connecticut Penal Code; attempted robbery in the first degree in violation of § 53a-49
and § 53a-134 (a)(2) of the Penal Code; and criminal possession of a pistol or revolver in violation of § 53a-217 of the Penal Code. On June 3, 1993, he was sentenced to a total effective sentence of ninety years, which was run consecutively to a term petitioner was serving. On August 5, 1993, he filed an appeal with the Connecticut Appellate Court raising the following issues: the use of his prior arrests in a suppression hearing; the failure to allow into evidence the facts of his assault by a Bridgeport police officer and the resulting alleged bias of the police; the trial court's answers to two questions on the felony murder instructions; the use of an attempted robbery conviction as the predicate felony for the charge of criminal use of a firearm; the denial of his request to dismiss trial counsel; and the denial of his motion for a new trial, which was based on the judge's absence during portions of the voir dire. On June 10, 1997, the Appellate Court affirmed the judgment of conviction. State v. Joyce, 45 Conn. App. 390 (1997). Petitioner then petitioned the Connecticut Supreme Court which granted certification on the second issue of his right to present evidence of a state witness' bias against him. State v. Joyce, 243 Conn. 904 (1997). On May 18; 1999, the Supreme Court ruled it had improvidently granted CT Page 2637 certification and dismissed the appeal. State v. Joyce, 248 Conn. 669
(1999).
Petitioner filed a writ of habeas corpus on September 21, 1995, claiming ineffective assistance of counsel. The habeas corpus proceeding was stayed pending final resolution by the Connecticut Supreme Court. Petitioner then filed an amended petition, dated July 17, 1999, and subsequently filed a second amended petition, dated March 8, 2000, alleging ineffective assistance of both his trial and appellate counsel.
The petitioner's habeas trial occurred over six days on the following dates: March 20, 2000, May 1, 2000, May 15, 2000, June 12, 2000, July 10, 2000 and September 25, 2000.
The court heard the testimony of several witnesses over the course of the trial, including: (1) the petitioner; (2) Lt. Adam Radzmirsky, of the Bridgeport Police Department; (3) Assistant State's Attorney John C. Smriga; (4) Captain Robert Studivant, of the Bridgeport Police Department Internal Affairs Division; (5) Sgt. David Daniels, of the Bridgeport Police Department; (6) Det. John Kennedy of the Bridgeport Police Department; and (7) petitioner's appellate counsel, Attorney Kent Drager. The court took judicial notice of the fact that Attorney Paul M. Tymniak, petitioner's trial counsel, died in July, 1999, and was therefore not available as a witness at these proceedings.
Petitioner claimed his trial counsel, Attorney Paul M. Tymniak, a special public defender, was ineffective in that he failed to move to dismiss the count of criminal use of a firearm because the underlying predicate felony of attempted robbery was unduly prejudicial, that Attorney Tymniak did not properly pursue a motion in limine to exclude petitioner's prior convictions if he testified, that Attorney Tymniak did not adequately develop evidence which would support a defense of self-defense or abandonment, that he failed to develop the testimony of Bridgeport police officers, David Daniels or Glen Prentice, which would have supported the above defenses, and that Attorney Tymniak failed to object to the absence of the court reporter and the occasional absence of the trial judge during voir dire. Petitioner claims that his appellant counsel, Attorney Kent Drager, an assistant public defender, was ineffective in that he failed to raise on appeal that the exclusion of Daniels' and Prentice's testimony violated his fundamental right to present a defense.
The United States Supreme Court "uniformly has been guided by the proposition that the writ [of habeas corpus] should be available to afford relief to those persons `whom society has grievously wronged' in light of modern concepts of justice." Kuhlmann v. Wilson, 477 U.S. 436 (1986). The CT Page 2638 writ is to serve as a "bulwark against convictions that violate `fundamental fairness'." Engle v. Isaac, 456 U.S. 107, 126 (1982). Petitioner bears a heavy burden of proof. Lubesky v. Bronson,213 Conn. 97, 110 (1989). The United States Supreme Court and our courts have cited the significant costs of collateral review of a criminal conviction by way of a writ of habeas corpus. Engle v. Isaac,456 U.S. at 126-27; Bunkley v. Commissioner of Correction,222 Conn. 444, 462 (1992).
To prevail on a constitutional claim of ineffective assistance of counsel, petitioner must demonstrate both a deficient performance and actual prejudice. Id., 455. To satisfy the first prong, petitioner must establish that his counsel made "errors so serious that [he] was not functioning as the `counsel' guaranteed the [petitioner] by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must show that counsel's performance fell below an objective standard of reasonableness, considering all the circumstances. Danielsv. Warden, 28 Conn. App. 64, 69, cert. denied, 223 Conn. 924 (1992). "We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Siano v. Warden,31 Conn. App. 94, 97, cert. denied, 226 Conn. 910 (1993). Even if the assistance is found to have been lacking, petitioner bears the further burden of showing that there is a reasonable probability that were it not for the deficiency of counsel, the results of the trial would have been different. Aillon v. Meachum, 211 Conn. 352, 357 (1989). To satisfy the second prong, petitioner must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citations omitted.) Id., 689.
Petitioner argues that his trial counsel was ineffective by failing to move to dismiss the information on the ground that it contained explicit reference to petitioner's prior conviction for attempted robbery and by stipulating to admission into evidence of said conviction. Petitioner, however, admits that trial counsel did file a "boiler plate" motion, but claims that the basis of said motion was not sufficiently set forth. Attorney John C. Smriga, a supervisory assistant state's attorney, testified that he was the state's attorney who tried petitioner's CT Page 2639 criminal matter. He testified that petitioner had previously been convicted of one of the enumerated felonies and therefore was charged with the crime of criminal possession of a firearm. He stated that an attempted robbery in the first degree was one of those enumerated felonies, and therefore, he used this as the predicate felony. Attorney Tymniak did object, in chambers, to the use of this felony to Attorney Smriga and to the trial court. He further testified that the trial judge spent a lot of time discussing issues in chambers. Attorney Tymniak tried to persuade Attorney Smriga to eliminate this count and then attempted to have him use an unnamed felony. Attorney Smriga testified that he would not change the language of this count unless ordered to do so by the trial court, and the trial court indicated it would not do so. He further testified that, in his opinion, Attorney Tymniak did not have a valid legal argument to have him remove the attempted robbery as the predicate felony. Attorney Tymniak did stipulate that petitioner had been convicted of this felony, thereby eliminating the need for the state to prove this before the jury. By this stipulation, it prevented the state from proceeding with the evidence relating to the underlying crime of attempted robbery. If not for the stipulation, the state would have produced an extended period of proof before the jury of his prior conviction. Attorney Smriga testified that, in his experience, other attorneys faced with this circumstance almost always stipulate to the crime.
Here, petitioner has failed to demonstrate how Attorney Tymniak's conduct fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law. Valeriano v. Bronson, 209 Conn. 75, 85-86 (1988). This is especially true in light of the uncontroverted testimony that almost all other attorneys would do as Attorney Tymniak did here.
Petitioner also claims that Attorney Tymniak was ineffective in not using State v. Banta, 15 Conn. App. 161, cert. denied, 209 Conn. 815
(1988), in his argument. The Appellate Court, in affirming petitioners's conviction, discussed Banta in deciding this issue and used the reasoning in Banta and State v. Jones, 234 Conn. 324 (1995) to conclude that petitioner was not deprived of any rights by the manner in which he was charged in count six. State v. Joyce, supra, 45 Conn. App. 404-05. The Appellate Court held that the trial court's cautionary instructions, given twice, prevented any prejudice to petitioner. Id. Petitioner has failed to demonstrate any prejudice from the failure to cite Banta.
Petitioner claims that Attorney Tymniak failed to include case law in his motion in limine. The trial court ruled that petitioner's prior robbery convictions could be used by the state to impeach petitioner's credibility if he testified and that the state could use these convictions by name. Further, that other felony convictions would come in CT Page 2640 as prior felonies, but not by name. Petitioner never testified that, but for the trial court's ruling on the motion in limine, he would have testified. Therefore, petitioner has failed to demonstrate any prejudice.
In State v. Pinnock, 220 Conn. 765 (1992), which was decided a year before petitioner's trial, our Supreme Court ruled that when a prior conviction used for impeachment purposes directly bears on the witnesses credibility, "the title of the offense and the date of the conviction should be admitted before the jury." Id., 780. Conversely, if the prior felony does not bear directly on veracity, then it should go before the jury as an unspecified crime. The crime of larceny, which is a component of robbery, is such a crime that bears directly on honesty and therefore comes before the jury by name. State v. Nardini, 187 Conn. 513, 526
(1982). Therefore, petitioner has not demonstrated prejudice as the trial court's ruling comported with the dictates of applicable case law.
Petitioner claims further that his trial counsel failed to develop and present evidence at trial regarding an Internal Affairs investigation of one of the investigating officers.
Specifically, petitioner's claim is that trial counsel failed to develop and present evidence at trial tending to show that one of the investigating officers for this case, Det. John Kennedy, had previously been involved in an attempted cover up of a previous incident on February 15, 1990, in which the petitioner was punched, while handcuffed, by a member of the Bridgeport Police Department.[1] That prior incident was the subject of an Internal Affairs investigation that resulted in departmental charges being brought against Det. Kennedy and other officers in the Bridgeport Police Department. Petitioner claims that evidence of Det. Kennedy's role in the incident and the findings of the Internal Affairs investigation, including the charges against Det. Kennedy, should have been offered by trial counsel as evidence of bias on the part of the Bridgeport Police Department, and as evidence tending to undermine the credibility of petitioner's confession to Det. Kennedy's immediate superior during the investigation of this case, Det. Sgt. Glen Prentice.
Attorney Smriga testified that he first learned of the Procaccini incident from Attorney Tymniak during pretrial discussions and that Attorney Tymniak was prepared to use this incident during trial. Attorney Smriga obtained the Internal Affairs record, and he and Attorney Tymniak reviewed the report. As part of his motion to suppress the statements, petitioner claimed that the Bridgeport police were motivated to lie, because they were angry at him for getting Procaccini in trouble and were looking for revenge. Both Officers Kennedy and Prentice testified at the CT Page 2641 suppression hearing.
Attorney Drager, petitioner's appellate counsel, testified that petitioner's theory, supported by his testimony at the hearing, was not that he falsely confessed but that Prentice had put things into the confession he did not say. (Tr., 6/12, p. 14.) Attorney Drager further stated that petitioner testified that he gave statements to Prentice which Prentice put down, but in addition, Prentice added his own facts to those statements. Petitioner did not testify that Prentice intimidated him into giving a false statement. (Tr., 6/12, p. 18.) Attorney Drager testified that Attorney Tymniak was trying to tell the jury that they could not credit Prentice's testimony or the statements he took; however, the trial court ruled this evidence inadmissable. (Tr. 6/12, p. 22.) Attorney Drager further testified that Attorney Tymniak could not, at trial, claim that petitioner was coerced into making the confession because petitioner had not so testified at the suppression hearing. He testified that Prentice added facts to the confession and not that he, petitioner, had falsely confessed. (Tr., 6/12, p. 27.) Attorney Smriga testified that Attorney Tymniak's theory on the motion was to show that the police were motivated to lie because of the Procaccini incident, and therefore, they would alter their testimony. He also testified he would have tried the case without the statements, because he had other strong evidence of petitioner's guilt. (Tr., 7/10, pp. 17-18.)
Detective John Kennedy testified he had arrested petitioner on February 15, 1990, at the railroad station, and when Procaccini arrived at the scene, petitioner and Procaccini exchanged words, and Procaccini hit petitioner. It is clear that Kennedy was involved with the crime which is the subject of this habeas. He interviewed the deceased brother and showed him a photo array, but the brother did not make an identification. He also interviewed the victim's wife, and she picked out petitioner's photo, but was uncertain of her identification. (Tr., 5/15, p. 43.) Kennedy testified he accompanied Prentice to Hartford, and when he went into the hospital room, he saw petitioner in the bed and he left the room. He went to a superior in the detective bureau and asked not to be involved in the investigation, and his request was granted. (Tr., 5/15, pp. 49, 91.) Detective Kennedy also testified at the suppression hearing.
Petitioner claims that Det. Kennedy's involvement with the Procaccini incident should have been before the jury. This, however, ignores both the Appellate Court and Supreme Court decisions, which clearly indicate that both appellate tribunals agreed with Attorney Tymniak's proffer of the same evidence through Prentice and Officer David Daniels but found that trial court's restrictions on this evidence was harmless beyond a reasonable doubt. State v. Joyce, 45 Conn. App. at 397-400. The purpose of the evidence at trial was to discredit Prentice, who had a much larger CT Page 2642 role in the investigation than did Kennedy. Once Attorney Tymniak was denied by the trial court as to the cross-examination of Prentice and the offer of proof for Daniels' direct testimony, it cannot be said that the trial court or the Appellate Court would have viewed Kennedy's testimony any differently.
Petitioner claims that Attorney Tymniak should have offered Officer David Daniel's testimony to challenge petitioner's confessions to Prentice. He claims this testimony could have been used to show his confession was not voluntary under Crane v. Kentucky, 476 U.S. 683
(1986). Crane allows the introduction of evidence which shows that a confession was not essentially a free and unconstrained choice. "In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Citations omitted; internal quotation marks omitted.) State v. James,237 Conn. 390, 410-11 (1996).[2]
Petitioner claims that, based on Officer Daniels' testimony, his attorney could have argued to the jury that petitioner feared the Bridgeport police because of the prior beating, and therefore, his confession is unreliable. Attorney Drager testified that, in his opinion, Attorney Tymniak could not attack the confession under Crane
because petitioner had testified that he was not coerced into making the confession, but rather, Prentice added facts, and it was a false confession. Officer Daniels' testimony would not have supported this theory. At trial, Attorney Tymniak was attempting to challenge the credibility of Prentice as he was the only witness to the confession. (Tr., 6/12, p. 39.) Attorney Drager testified that Crane is used when a defendant is claiming that he told the police something that is not true because he wants the police to stop harassing him. Here, petitioner testified everything he told Prentice was true but Prentice added things to the statement which he did not say. Therefore, it would be misleading to suggest to the jury that petitioner gave a false, coerced confession when that did not happen or is not what petitioner claimed happened. (Tr., 6/12, p. 46.) Daniels' testimony, therefore, could not be used for the purpose claimed by petitioner.
Petitioner also claims that the absence of the trial judge and stenographer deprived him of an adequate record and that his attorney CT Page 2643 should have objected to their absence at the time of trial. The Appellate Court found the record was adequate and reviewed this claim on appeal.State v. Joyce, supra, 45 Conn. App. 407. It is important to note that the trial court was present for the vast majority of the voir dire. The trial transcript shows that the trial court was absent during part of the voir dire of two or three jurors, and the record is silent as to whether they were selected to sit on the jury. The trial court found that both counsel had consented to his partial absence and that no prejudice to petitioner had occurred during his absence. Attorney Smriga testified that at the time of petitioner's trial, it was not uncommon for trial judges to leave the bench during voir dire. (Tr., 3/20, p. 70.) Petitioner has failed to show that Attorney Tymniak's performance fell below the standard of reasonably competent counsel and has failed to demonstrate any prejudice, and therefore, he cannot prevail on this claim. Tillmanv. Commissioner of Correction, 54 Conn. App. 749, 756, cert. denied,251 Conn. 913 (1999).
Petitioner cites State v. Patterson, 230 Conn. 385 (1994) as authority for this claim. Patterson came to the Supreme Court by certification from the Appellate Court which held that the absence of the trial judge constituted per se reversible error. State v. Patterson,31 Conn. App. 278, 281-302 (1993). The Supreme Court ruled that under the then existing law, a defendant could waive the presence of the trial judge during voir dire and overruled the Appellate Court. State v. Patterson, supra, 230 Conn. 390. The Supreme Court found that the Appellate Court decision was based primarily "on the right of prospective jurors not to be improperly excluded from participating in the trial process." Id., 393. The rule announced in Patterson was done under the court's supervisory powers and was only prospective. Id., 400.
Petitioner's final claim that his appellate counsel was ineffective in that he failed to raise as an issue that the trial court's exclusion of Officer's Daniels' and Prentice's testimony deprived him of presenting a defense. Petitioner is not speaking of the traditional criminal defense of self-defense, diminished capacity, or third party culpability, for example, but rather to show the jury that petitioner confessed because of a fear of being beaten. Attorney Drager testified that he believed that Attorney Tymniak could not ethically make such an argument, because petitioner did not testify to such fears at the suppression hearing. Petitioner's claim was that Prentice wrote a false confession, and Attorney Drager said that is all that Attorney Tymniak could argue to the jury.
At the suppression hearing, in an offer of proof, Prentice testified that he only became aware of petitioner's involvement in the Procaccini CT Page 2644 incident after he took the statements. (Tr., pp. 584-85.) Prentice testified that Procaccini was a "brother police officer, that's it." (Tr., pp. 601-02.) Daniels, in an offer of proof, testified that for thirty to sixty days after the incident, his fellow police officers, including Prentice, did not speak to him. (Tr., pp. 710-11.) The trial court excluded the evidence, Attorney Tymniak preserved the issue, and Attorney Drager raised the claim on appeal. The matter was fully discussed by the Appellate Court, and although the court agreed with Attorney Drager that the exclusion of this evidence was error, however, the error was held to be harmless. State v. Joyce, supra,45 Conn. App. 397-400.
The constitutional right to the effective assistance of counsel includes the right to such counsel on appeal. Evitts v. Lucey,469 U.S. 387 (1985). Thus, petitioner must establish not only a deficient performance but must also establish prejudice from that performance. Sekouv. Warden, 216 Conn. at 690. The test is not whether the issue, had it been raised on appeal, might have entitled petitioner to relief, but whether the failure to raise the issue resulted in a miscarriage of justice. Bunkley v. Commissioner of Correction, supra, 222 Conn. 461. Petitioner must establish that he would have been entitled to a reversal on appeal and that the deficiency raises a probability sufficient to undermine confidence in the outcome. Id., 454. Attorney Drager testified that since 1985, when he started his employment with the Public Defender's office, he has completed between sixty and seventy appeals, including three death penalty appeals. He further testified that he has been criticized by the Supreme Court for raising too many issues on appeal. (Tr., 6/12, pp. 59, 62.) Attorney Drager testified that here, whether he labeled this issue as a denial of the right of confrontation, as he argued in his appeal, or the denial of the right to present a defense, it would have been treated the same, and the same harmless error analysis would have been applied. Here, petitioner has failed to satisfyBunkley and Sekou and therefore cannot prevail on this claim.
A complete review of the testimony and evidence presented allows this court to find that the petitioner has received the effective assistance of counsel both on the trial and the appellate levels. The subject case is a most serious one, one in which the petitioner has been found guilty of killing another person in the course of committing a felony. He has received a sentence of ninety years for this offense. Petitioner had a jury trial before an experienced judge with the assistance of an attorney who apparently understood the complexities of the law and this case. Attorney Tymniak raised the appropriate issues throughout the suppression hearing and trial. The trial court made rulings on those issues, and those rulings were reviewed by the Appellate Court. Petitioner also had the very capable assistance of appellate counsel. Attorney Drager CT Page 2645 presents himself with an excellent educational background and substantial experience in the field of appellate work. His testimony before this court is found to be most credible. of the issues he presented to the Appellate Court, the only error in the trial proceedings was found to be harmless beyond a reasonable doubt and did not warrant a new trial. The Supreme Court then dismissed the appeal after considering briefs and oral arguments of the parties.
It is not the function of this court to "second-guess" the decisions of petitioner's attorneys. Those decisions have been made, ruled upon by a judge and reviewed by the Appellate Court. Each decision of counsel was made in the heat of trial and with a variety of consequences. To view these decisions with the benefit of hindsight would not be appropriate nor is it the proper standard. Facing the significant weight of evidence against his client, Attorney Tymniak did an effective job of protecting the interests of his client. He evidently provided sufficient representation for the jury to acquit the petitioner on the charges of attempted murder and assault in the third degree. There has been no evidence presented that would allow this court to find that he failed to adequately represent the interests of his client, as defined by state and federal law.
This court does, therefore, find that petitioner has received the effective assistance of counsel both at the trial and appellate levels. The petition is, therefore, dismissed, and the habeas denied.
Resha, J.