[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION: RE: MOTION #163 MOTION TO PRECLUDE USE OF PEER REVIEW DOCUMENTS
The defendants in the instant action, by way of motion filed July 13, 2001, moved that the court preclude the plaintiff from using a certain document tat they assert is a peer review document. It is the position of the moving party that the document is privileged pursuant to the provisions of § 19a-17b of the Connecticut General Statutes and therefore is not subject to discovery or introduction into evidence.
Sec. 19a-17b (2) C.G.S. defines the term peer review as follows:
 "Peer review" means the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review and claims review.
Section 19a-17b of the Connecticut General Statutes concerns medical peer reviews. Subsection 19a-17b (d) concerns the use of peer reviews in civil actions against health providers. This subsection states that:
The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testfy in any such civil action as to the content of such proceedings; provided the provisions of this subsection shall not preclude (1) in any civil action, the use of any writing which was recorded independently of such proceedings; (2) in CT Page 2082 any civil action, the testimony of any person concerning the facts which formed the basis for the institution of such proceedings of which he had personal knowledge acquired independently of such proceedings; (3) in any health care provider proceedings concerning the termination or restriction of staff privileges, other than peer review, the use of data discussed or developed during peer review proceedings; or (4) in any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restriction imposed, if any. (emphasis added)
In her memorandum in opposition of the motion to preclude, and by way of a signed affidavit, the plaintiff asserts that prior to the commencement of this lawsuit, her counsel requested access to pathology slides of her pap smears that were in the possession of the defendant Norwalk Hospital. Plaintiff further asserts that the hospital, through its counsel refused to produce said slides, but agreed to make them available for inspection at the hospital's department of pathology. Plaintiffs counsel went to the hospital and was provided the pathology slides as well as the hospital's written interpretation of said slides. Plaintiff further asserts that her counsel requested, and was provided copies of all documents provided to counsel at that time.
The movant asserts that the subject document is confidential pursuant to § 19a-17b C.G.S., the plaintiff however assert that the movant has not met its burden of proof to show that the document is confidential pursuant to the provisions of the aforementioned statute.
 Confidentiality properly attaches to peer review documents only when the moving party has provided "sufficient information to enable the court to determine that each element of the privilege is satisfied. . . . A failure of proof as to any element of the privilege causes the claim of privilege to fail." (Citations omitted.) State a rel. Dixon v. Darnold, 939 S.W.2d 66, 70 (Mo.App. 1997).
 Babcock v. Bridgeport Hospital Et AL, 251 Conn. 790, 828 (1999).
On August 11, 1997, the deposition of Dr. Michael DiCorato, a Norwalk Hospital Pathologist was taken. During said deposition one of the documents provided by the defendant hospital was marked as "Plaintiffs Exhibit 6". This document is the subject of the defendant's motion to preclude. CT Page 2083
On July 6, 2001, Dr. DiCorato signed a sworn affidavit. Paragraph six of said affidavit provides in pertiment part that:
 6. As part of my responsibilities as a pathologist in the Norwalk Hospital Department of Pathology, I participate in monthly meetings of the Patient Care Evaluation Committee, which meets to discuss and evaluate the quality of patient care provided by the Department's cytologists, pathologists and laboratory personnel for the purpose of improving the quality of care rendered.
 7. It is my understanding that the Patient Care Evaluation Committee is a hospital medical review committee established pursuant to the written bylaws of Norwalk Hospital.
 8. As part of my responsibilities as a pathologist in the Norwalk Hospital Department of Pathology, I participated in a Patient Care Evaluation Committee meeting held in September 1996.
 9. The purpose of this September 1996 Committee meeting was to evaluate the quality of care provided by department cytologist, pathologist and laboratory during a particular time period to address specific pathology specimens which had been interpreted by department members, and to evaluate whether the original diagnosis was appropriate.
 10. As part of my responsibilities as a pathologist in the Norwalk Hospital Department of Pathology, I prepared an outhne of cytology specimens and related issues which were to be addressed at that particular meeting. That document was marked at my deposition as Plaintiffs Exhibit 6.
 11. Plaintiff's Exhibit 6 was created for the sole purpose of identifying the cytology related care issues to be addressed at the Patient Care Evaluation.
12. Plaintiffs Exhibit 6 was not created for any other purpose or used in any other department meeting other than the Patient Care Evaluation Committee CT Page 2084 Meeting.
 13. Plaintiff's Exhibit 6 addressed a particular pathology specimen, C95-2059 and issues pertaining to the original diagnoses of that sample and related samples addressed in the document are samples taken from Tammy Tucci, the plaintiff in this care and directly at issue in this lawsuit.
 14. It was my understanding at the time I prepared Plaintiff's Exhibit 6 that I was preparing it as part of a peer review and that the document and its contents, as well as the discussion it prompted at the meeting, would be privileged and would remain confidential.
After completing its examination of the file, including but not limited to the instant motion, the motion in opposition to this motion and the materials filed in support and in opposition of this motion, the Court accepts the assertions in Dr. DiCorato's affidavit as true and finds that it establishes the following relevant points about Plaintiffs Exhibit 6:
 1) It was prepared for use in a September 6, 1996 meeting of the Patient Care Evaluation Committee; and
 2) It was created "for the sole purpose of identifying the cytology related care issues to be addressed at the Patient Care evaluation" meeting of September 6, 1996.
3) It was not created for any other purpose; and
 4) It was prepared, as part of a peer review and the drafter thought that it would remain confidential.
The Court also finds that the September 6, 1996 meeting of the Patient Care Evaluation Committee was a meeting wherein a "substantive discourse" of matters that are "subject to evaluation" were to be discussed and deliberated and therefore was a proceeding within the context of the statute. See Babcock, Supra at 822.
In addition to the issues that she raised concerning whether or not Exhibit 6 was covered by the provisions of § 19a-17b C.G.S., the plaintiff also asserts that the even if the subject document was covered by the statute, the defendants have waived any privilege wanted by the CT Page 2085 statute for reason that they released a copy the plaintiffs counsel prior to the bringing of this cause of action. The plaintiff asserts that "[T]he peer review statue is intended to prevent the disclosure of peer review material in the first instance. Once information has been disclosed, however, the purpose of the state to maintain the confidentiality of the peer review process is rendered moot." (See Plaintiff's Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Preclude, at page 9.). The movant assert however that "the fact that somehow the plaintiff has obtained a copy of Plaintiff's Exhibit 6 does not alter the confidential nature of the document." (See Defendants' Memorandum in Support of the Motion to Preclude at page 7.)
As was previously stated, the plaintiff in the instant action asserts that her counsel was given the subject document pursuant to her request for her medical files. In support of its objection to the Motion to Preclude, counsel for the plaintiff filed signed affidavit which states that:
1) I am the attorney representing the plaintiff, Tammy Tucci.
 2) Prior to the institution of his lawsuit, I requested the Norwalk Hospital provide me with various pathology slides regarding cervical samples ["PAP smears"] taken from client while a patient of the Norwalk Hospital. See, Exhibit A, Correspondence.
 3) The Norwalk Hospital refused to provide me with the slides but agrZed to make them available for review at the Hospital. See, Exhibit B, Correspondence.
 4) On August 11, 1997, I appeared at the Norwalk Hospital, Department of Pathology, for the purposes of reviewing the pathology slides in possession of the Hospital.
 5) As instructed, I met with Dr. Saraswathi Nair, the Chairman of the Department of Pathology.
 6) At the time, Dr. Nair gave me a slide binder containing the pathology slides from Tammy Tucci's Pap smears, and a manilla folder containing reports of the Norwalk Hospital, Department of Pathology interpretations of Tammy Tucci's PAP smears, including the document in question.
 7) I requested, and received, copies of the documents within the manilla folder from Department of Pathology Staff
The defendant's have not filed any affidavits, depositions, transcripts CT Page 2086 or any other evidence to rebut the plaintiff's assertions as to how she obtained access to the subject document.
Section 19a-17b gives medical providers the right to make certain documentation related to peer reviews confidential and exempt from disclosure in civil actions. However such rights are usually capable of being waived.
"Waiver is the `intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Advest, Inc. v. Wachtel, 235 Conn. 559, 569, 668 A.2d 367 (1995). `In general, federal and state constitutional and statutory rights can be waived.'" New Haven v. Local 884, Council 4, AFSCME, AFL-CIO, 237 Conn. 378, 385, 677 A.2d 1350 (1996). Waiver can occur in different ways depending on the right or privilege being waived. See, e.g., State v. Patterson, 230 Conn. 385, 390, 645 A.2d 535 (1994) (holding that criminal defendant implicitly waived right to have trial judge present during voir dire by acquiescing when judge left courtroom and by asking judge to return only when judicial determinations needed), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996); State v. Simino, 200 Conn. 113, 125-33, 509 A.2d 1039 (1986) (holding that criminal defendant waived right to be present in court during jury charge by voluntarily failing to attend trial); State v. Shockley, 188 Conn. 697, 707, 453 A.2d 441
(1982) (trial court required to conduct inquiry of cnminal defendant to ascertain whether waiver of right to jury trial knowingly, intelligently made); State v. Taylor, 63 Conn. App. 386, 402, ___ A.2d ___ (2001) (discussing Practice Book § 44-3 and its requirements concerning court's necessary inquiry as to whether criminal defendant has made knowing, voluntary, intelligent waiver of right to be represented by counsel); State v. Lugo, 61 Conn. App. 855, 861-62, 767 A.2d 1250 (discussing Practice Book § 39-19 requirements for acceptance of guilty plea and waiver of constitutional rights inherent in guilty plea), cert. denied, 255 Conn. 955, ___ A.2d ___ (2001); State v. Joyce, 45 Conn. App. 390, 407, 696 A.2d 993 (1997) (holding that where counsel for criminal defendant had consented to judge's absence during voir dire, defendant waived right to judge's CT Page 2087 presence), appeal dismissed, 248 Conn. 669, 728 A.2d 1096
(1999).
State v. Stewart, 64 Conn. App. 340, 355 (2001).
Although there are no Connecticut cases on the waiver of the privilege granted pursuant to § 19a-17b, both the plaintiff and the movants have compared such a waiver with the waiver of the attorney/client privilege.
 To analogize to the confidentiality of attorney-client communications, "[a] client may waive a privilege by voluntary disclosure to a third party; the disclosure breaches the confidentiality of the attorney-client relationship and, therefore, waives the privilege." Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., supra, 689 F. Sup. 844; see also State v. Turner, 252 Conn. 714, 733, 751 A.2d 372
(2000) ("voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege").
 Earthgro, Inc. v. Wilchfort, No. CV-01-0808362-S (Jul. 16, 2001), 2001 Ct. Sup. 9172 (Bryant, J.).
Nothing in the pleadings indicates that the movants expressly waived the privilege afforded by § 19a-17b. However a waiver may be implied as well as expressed.
 "A client may . . . by his actions impliedly waive the privilege or consent to disclosure." "[I]t is the client's responsibility to insure continued confidentiality of his communications." In re Von Bulow, 828 F.2d 94, 101 (2d Cir. 1987). "The power to waive the attorney-client privilege rests with the client or with his attorney acting with his authority. C. McCormick, Evidence (4th Ed. 1992) § 93; see also Doyle v. Reeves, 112 Conn. 521, 523
(1931) (communications relevant to legal advice privileged until client waives protection). . . . [O]nce the confidence protected has been breached, the privilege has no valid `continuing office to perform." In re Von Bulow, supra; Gebbie v. Cadle Co., 49 Conn. App. 265, 274 (1998).
 Kowalonek v. Bryant Lane Inc., No. CV96 0324942 5 CT Page 2088 (Apr. 11, 2000) 2000 Ct. Sup. 4071 (Moraghan, J.).
In the current situation, the defendant Norwalk Hospital's Department of Pathology simply gave access of the subject documents upon the request of plaintiffs counsel. Unlike the situation in Barnes/Science AssociatesLtd. Partnership v. Barnes Engineering Co., 1 Conn.L.Rptr. 724, 1990 WL 283936 (1990), where the confidential documents were accidentally disclosed with several thousand other documents during the discovery process, the subject document was in the plaintiffs file in the Department of Pathology. There were only a few documents in the subject file. There is no indication that the document was ever segregated from otherwise disclosable information. The disclosure was made during a highly ritualized process of a formal written request being made by plaintiffs counsel; an initial written refusal by the defendant Norwalk Hospital, through its legal counsel; the arrangement of an appointment with the Pathology Department; a meeting with the Chairman of said department; and finally a review of the material and a request for copies, including, but not limited to a copy of Plaintiffs Exhibit 6. All of the foregoing events took place over a period of approximately ten days, which is a substantial period of time.
The movant waived any rights that it had pursuant to § 19a-17b of the Connecticut General Statutes to prevent the subject document from being used in a civil proceeding. The motion to preclude the use of Plaintiffs Exhibit 6 in the prosecution of this action is denied.
 ___________________ Richard A. Robinson, J February 22, 2002