STATE OF CONNECTICUT *v.* WARREN PATTERSON
(14807)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, JS.

Argued May 11—decision released July 26, 1994

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, *Carol Dreznick,* assistant state's attorney, and *James Somers,* legal intern, for the appellant (state).

*David M. Cohen,* with whom, on the brief, was *Gregory J. Williams,* for the appellee (defendant).

BORDEN, J. The principal issue in this certified appeal is whether the judge in a criminal trial must be present in the courtroom during the entire jury voir dire. The defendant, Warren Patterson, was charged with possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b), and possession of marijuana in violation of General Statutes § 21a-279 (c). The jury returned a verdict of guilty on the first count and not guilty on the second count. The trial court, *Sylvester, J.,* rendered judgment in accordance with the

verdict and also, on the basis of the verdict, revoked the defendant's probation from a prior offense.

The defendant appealed to the Appellate Court from the judgment of conviction and the judgment of revocation of probation, claiming, inter alia, that the trial court had improperly concluded that the state had not discriminatorily employed a peremptory challenge to exclude an African-American venireperson from the jury.[1] The Appellate Court reversed the judgment of conviction, concluding that the trial judge's absence from the courtroom during voir dire: (1) precluded review of the assertedly discriminatory peremptory challenge; and (2) constituted per se reversible error. *State* v. *Patterson,* 31 Conn. App. 278, 281–302, 624 A.2d 1146 (1993). We reverse the judgment of the Appellate Court.[2]

---

[1] The appeals from the judgment of conviction and the judgment of revocation of probation were consolidated in the Appellate Court. In that consolidated appeal, the defendant also claimed that the trial court had improperly: (1) failed to set aside legally inconsistent verdicts; (2) failed to suppress the fruits of a search of the defendant's vehicle; (3) failed to suppress an inculpatory statement the defendant had made to the police; (4) sentenced the defendant immediately following the verdict without first ordering a presentence investigation pursuant to Practice Book § 910; and (5) failed to follow certain procedural rules in revoking the defendant's probation. *State* v. *Patterson,* 31 Conn. App. 278, 280, 624 A.2d 1146 (1993). The defendant addressed the judge's absence during voir dire in his argument to the Appellate Court regarding the assertedly discriminatory peremptory challenges.

Although the Appellate Court's conclusion regarding the judge's absence from the voir dire was dispositive of the appeal, the Appellate Court also discussed some of the remaining issues. The Appellate Court ruled in favor of the state on the questions of inconsistent verdicts; id., 305; and the search of the vehicle. Id., 310. The court also ruled in favor of the defendant regarding the probation revocation, and therefore reversed the judgment of revocation. Id., 312. The court did not address the defendant's claims that the trial court had improperly: (1) sustained the state's peremptory challenge of an African-American venireperson; (2) bypassed a presentence investigation; and (3) failed to suppress an inculpatory statement.

[2] We note that the Appellate Court's remand for a new probation revocation hearing is not within our certified questions and is not directly affected by our disposition of this appeal.

The following facts are undisputed. The jury selection in this case occurred on October 3 and 4, 1991. After the trial judge gave the first panel its preliminary instructions, he stated: "I'm going to leave the voir dire up to you people, and I'll be in my chambers if I'm needed. Thank you." The judge then retired to his chambers, leaving the proceedings in the hands of the two attorneys and the court clerk. The proceedings were recorded on cassette tapes. Neither party objected to this procedure.

The defendant is an African-American, and there were three African-Americans in the venire. After the state had used peremptory challenges to excuse the first two African-Americans in the venire, defense counsel stated: "I'm going to make a *Batson*[3] challenge. I think we should get the judge out here." The judge then returned to the courtroom, and defense counsel argued that the state's peremptory challenge to the second prospective African-American juror was part of a pattern of deliberate racial discrimination in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Defense counsel asked the court to review the tape recording of that part of the voir

[3] In *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the United States Supreme Court held that, in a criminal trial, the state's exercise of peremptory challenges to exclude potential jurors on the basis of race violates the equal protection clause of the United States constitution. Although in federal courts the defendant must make a prima facie showing of discrimination before the burden shifts to the state to provide a neutral explanation for the peremptory challenge; id., 97; we have dispensed with the need for the defendant to make a prima facie case. *State* v. *Holloway*, 209 Conn. 636, 646, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). The United States Supreme Court has expanded *Batson* to invalidate race and gender based peremptory challenges in other contexts. *J.E.B.* v. *Alabama ex rel T.B.*,     U.S.    , 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994); *Georgia* v. *McCollum*, 505 U.S. 42, 55–56, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992); *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. 614, 628, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991); *Powers* v. *Ohio*, 499 U.S. 400, 403–404, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

dire. The trial court then asked the state why the prospective juror had been excused. The state replied that it had excused the prospective juror because of the juror's answers to questions about how she goes about making up her mind, and whether she listens to other people. The trial court then requested a playback of the tape recording of the state's questions and the prospective juror's replies on this topic. The court did not request a playback of either the tape recording of defense counsel's questioning on the same topic or any other portion of the voir dire. The trial court ruled in favor of the state and the defendant took an exception. The judge then returned to his chambers.

Shortly thereafter, the judge reentered the courtroom to give preliminary instructions to a second panel of prospective jurors. Afterward, he returned to his chambers. He was recalled to decide a challenge for cause, after which he again returned to his chambers without objection for the remainder of the voir dire. The judge was present for all of the trial proceedings after voir dire.

The Appellate Court concluded that the defendant's *Batson* challenge was unreviewable because the trial court had not been in a position to make the necessary findings underlying the claim. *State* v. *Patterson,* supra, 31 Conn. App. 281. Nonetheless, the Appellate Court reversed the conviction, reasoning that the presence of a judge at a criminal jury trial is a constitutional imperative, and that voir dire is a critical stage of the trial process. The Appellate Court therefore concluded that the judge's physical presence is required throughout a criminal voir dire. Id., 281–93. The court also noted that constitutional rights of both the defendant and prospective jurors are at risk during voir dire. Focusing particularly on the constitutional rights of the prospective jurors, the Appellate Court further concluded that the right to the presence of the judge at

voir dire could not be waived by the defendant. Id., 297. Finally, the Appellate Court concluded that the rights at stake are so basic and fundamental that their breach could never be deemed harmless. Id., 302.

We granted the state's petition for certification to appeal, limited to the following issues: (1) "Under applicable constitutional, common law or Practice Book rules, must a trial judge be physically present at voir dire in a criminal trial?"; (2) "If the judge's physical presence is required, may the defendant waive the judge's presence, and did he do so in the circumstances of this case?"; and (3) "If the judge's physical presence is required, may the judge's absence be harmless error, and if so, was it harmless error in the circumstances of this case?" *State* v. *Patterson,* 227 Conn. 901, 630 A.2d 72 (1993).

We conclude that, under existing law, even assuming that the trial judge must be present in the courtroom throughout the voir dire of a criminal trial, the defendant can waive such a requirement. We further conclude that the record demonstrates that the defendant waived the presence of the trial judge in this case. We also conclude, however, under our inherent supervisory authority over the courts, that trial judges must henceforth remain physically present during the entire voir dire in a criminal trial.

I

The state first claims that the Appellate Court improperly concluded that the trial judge must be physically present throughout the voir dire in a criminal trial. We begin our analysis by assuming, without deciding, that the state is incorrect. We assume, rather, that under applicable common law,[4] Practice Book rules,[5]

---

[4] See *State* v. *Smith,* 49 Conn. 376, 383 (1881).

[5] Practice Book § 848 provides: "[SELECTION OF JURY]—VOIR DIRE EXAMINATION

"Each party shall have the right to examine, personally or by his coun-

or federal and state constitutional requirements, the trial judge is required to be physically present during the entire voir dire of a criminal trial. Nonetheless, we conclude that the defendant can waive this right and that he did so in this case.

"Both the federal and state constitutions guarantee to an accused the right to a public trial by an impartial jury. U.S. Const., amends. VI and XIV; Conn. Const., art. I, § 8." *State* v. *Esposito,* 223 Conn. 299, 308, 613 A.2d 242 (1992). Part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. *Morgan* v. *Illinois,* 504 U.S. 719, 729, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992). In Connecticut, the right to question jurors individually is specifically guaranteed by our constitution.[6] *Rozbicki* v. *Huybrechts,* 218 Conn. 386, 390, 589 A.2d 363 (1991). The purpose of the voir dire examination is twofold: "first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge." *State* v. *Dolphin,* 203 Conn. 506, 512, 525 A.2d 509 (1987); *State*

sel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If *the judicial authority before whom such examination is held* is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judicial authority from any further service upon the panel, or in such action, as the judicial authority determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of the trial." (Emphasis added.) See also General Statutes § 54-82f.

[6] The constitution of Connecticut, article first, § 19, provides in relevant part: "The right of trial by jury shall remain inviolate . . . . In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

v. *Dahlgren,* 200 Conn. 586, 600, 512 A.2d 906 (1986). There are two sets of interests protected by the voir dire: (1) the interests of the parties, namely, the defendant and the state;[7] and (2) the interests of the prospective jurors.

A criminal defendant has the capacity to waive many of his or her fundamental procedural rights. The defendant can waive the right to counsel; *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State* v. *Frye,* 224 Conn. 253, 617 A.2d 1382 (1992); the right to remain silent; *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State* v. *Roseboro,* 221 Conn. 430, 442, 604 A.2d 1286 (1992); the right to be present during trial; *State* v. *Simino,* 200 Conn. 113, 125–29, 509 A.2d 1039 (1986); and, by entering a guilty plea, the rights to trial by jury and to confrontation, and the right against self-incrimination. *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Badgett,* 200 Conn. 412, 417, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

Indeed, by failing to object in a timely manner, the defendant is ordinarily deemed to have waived his equal protection right against racially motivated peremptory challenges under *Batson* v. *Kentucky,* supra, 476 U.S. 79.[8] See *Ford* v. *Georgia,* 498 U.S. 411, 417, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). Timely objection serves to avoid prejudicial error by permitting the trial court and the prosecutor to reconsider and perhaps change their courses of conduct while that is still possible. *Government of Virgin Islands* v. *Forte,* 806 F.2d 73 (3d

---

[7] Because in this appeal the state does not assert the loss of any protected interest, we confine our discussion in this regard to the interest of the defendant.

[8] We note that such a failure could result for different reasons. These reasons range from simple inadvertence, at one end of the spectrum, to a tactical choice based on the defendant's own desire not to have a particular venireperson on the jury, at the other end of the spectrum.

Cir. 1986). In addition, timely objection serves to preserve an adequate record for appeal. *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). As the United States Supreme Court has stated, " '[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right.' " *Peretz* v. *United States,* 501 U.S. 923, 936–37, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), quoting *Yakus* v. *United States,* 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 2d 834 (1944).

We conclude that because the defendant can waive one of the primary rights protected by judicial supervision of the entire voir dire, namely, his equal protection right against discriminatory peremptory challenges, the defendant can also waive the right to judicial supervision over the voir dire process itself. In these circumstances, the means of protecting the right should not receive greater protection than the right itself. Thus, as is true regarding most procedural rights, the defendant can waive his right to the presence of a judge during the entire criminal voir dire.

The Appellate Court, however, based its decision primarily on the right of prospective jurors not to be improperly excluded from participating in the trial process. We agree that prospective jurors have independent and protected interests in the criminal trial process. We disagree with the Appellate Court, however, that the defendant cannot, expressly or by implication, waive his right to assert those interests.

There is no question that jurors have a separate and independent interest in participating in the trial process, and that the defendant has third party standing to assert that interest.[9] *Georgia* v. *McCollum,* 505 U.S.

---

[9] We do not address the question of whether, by waiving the challenge to the peremptory strike in his own case, the defendant alters the right of any excluded jurors to bring independent actions to assert their own rights.

42, 55, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992); *Edmonson* v. *Leesville Concrete Co.,* 500 U.S. 614, 628, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991); *Powers* v. *Ohio,* 499 U.S. 400, 403–404, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); see also B. Underwood, "Ending Race Discrimination in Jury Selection: Whose Right Is It, Anyway?" 92 Colum. L. Rev. 725 (1992). "The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system." *Powers* v. *Ohio,* supra, 406. "The jury system postulates a conscious duty of participation in the machinery of justice . . . . One of the greatest benefits is in the security it gives the people that they, as jurors actual or possible, being part of the judicial system of the country can prevent its arbitrary use or abuse." *Balzac* v. *Porto Rico,* 258 U.S. 298, 310, 42 S. Ct. 343, 66 L. Ed. 627 (1922).

It is also not open to question that discrimination in jury selection offends "the dignity of persons and the integrity of the courts." *Powers* v. *Ohio,* supra, 499 U.S. 402. "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson* v. *Kentucky,* supra, 476 U.S. 87.

The United States Supreme Court has never concluded, however, that a criminal defendant cannot waive his right to assert the rights of jurors by failing to make timely objection. See *Ford* v. *Georgia,* supra, 498 U.S. 423. Indeed, the taint associated with improper peremptory challenges is substantially reduced if the defendant accedes to their use.

When a criminal defendant fails to raise a *Batson*-type claim with respect to a particular venireperson, he deprives his adversary of the opportunity to respond thereto, and he deprives the trial court of the opportunity to make a timely and accurate assessment of the sensitive and particularized facts necessary to the court's ruling. As we indicated above, the defendant is therefore ordinarily deemed to have waived his *Batson*-type claim by failing to assert it in a timely manner.

Waiver can occur, moreover, even when the trial judge is present throughout the voir dire. Thus, in that instance the defendant's failure to raise a *Batson*-type claim would result in the potential juror's right to participate remaining unvindicated in fact. In effect, then, even with the continuous presence of the judge at voir dire, the defendant by his silence can waive his right to assert the juror's interests. This conclusion does no more than recognize the reality of the trial process.

If that is the case, we fail to see why the defendant in the context of a particular criminal trial, by failing to object, cannot in effect also waive his right to assert the juror's interests in the continuous presence of a judge at the voir dire. To the contrary, we conclude that because the defendant can effectively waive his right to assert the right of jurors against improper exclusion by failing to assert a *Batson*-type challenge, the defendant can similarly waive his right to assert the juror's interest in the continuous presence of the judge at a criminal voir dire.[10]

---

[10] Courts in other jurisdictions are in agreement with our conclusion on this issue. See *Way* v. *Wainwright,* 786 F.2d 1095 (11th Cir. 1986); *Brown* v. *State,* 538 So. 2d 833 (Fla. 1989); *Peri* v. *State,* 426 So. 2d 1021 (Fla. App.), rev. denied, 436 So. 2d 100 (Fla. 1983); *State* v. *Eberhardt,* 32 Ohio Misc. 39, 282 N.E.2d 62 (1972). In *Peretz* v. *United States,* supra, 501 U.S. 923, the United States Supreme Court concluded that even if a criminal defendant has the constitutional right to demand the presence of

We next address explicitly that which we have implied, namely, the question of what constitutes a valid waiver in the context of this case. In some circumstances, a waiver of rights must be knowing, voluntary and intelligent, and it must be expressly made. See, e.g., *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Shockley,* 188 Conn. 697, 453 A.2d 441 (1982). In other circumstances, waiver can be implied. See *State* v. *Almeda,* 211 Conn. 441, 448, 560 A.2d 389 (1989); *State* v. *Kuskowski,* 200 Conn. 82, 88, 510 A.2d 172 (1986). We conclude that the waiver of judicial supervision of the entire voir dire in a criminal case need not be more deliberately expressed than the waiver of rights under *Batson* v. *Kentucky,* supra, 476 U.S. 79. The waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection.

The record indicates a valid waiver in this case. The defendant was represented by counsel and had had prior personal experience with the criminal justice system. See *State* v. *Williams,* 205 Conn. 456, 463, 534 A.2d 230 (1987). Of even greater significance is the fact

an Article III judge at voir dire, the defendant in that case had waived the right by consenting to supervision of the voir dire by a federal magistrate. The court concluded that the defendant's rights were sufficiently protected by a magistrate acting under the control of an Article III judge. *Peretz* differs from the present case, however, because in *Peretz* the magistrate, acting by statute as the delegate of judicial authority, was present for the entire voir dire.

A different line of federal cases also acknowledges that a criminal defendant may waive the right to judicial supervision of a voir dire. See *Haith* v. *United States,* 342 F.2d 158 (3d Cir. 1965); *Stirone* v. *United States,* 341 F.2d 253 (3d Cir. 1965), cert. denied, 381 U.S. 902, 85 S. Ct. 1446, 14 L. Ed. 2d 284 (1965); *Taylor* v. *United States,* 386 F. Sup. 132, 144 (E.D. Pa. 1974), aff'd, 521 F.2d 1399 (3d Cir. 1975); *United States* v. *Sams,* 219 F. Sup. 164 (W.D. Pa. 1963), rev'd in part on other grounds, 340 F.2d 1014, cert. denied, 380 U.S. 974, 85 S. Ct. 1336, 14 L. Ed. 2d 270 (1965). These cases, however, predate *Batson* and its progeny, and also predate the practice of delegating judicial authority to a magistrate under *Peretz.* Thus, the cases have uncertain precedential value for this case.

that the defendant acquiesced each time the judge left the courtroom, asking the judge to return only when judicial determinations were needed. This behavior demonstrates that the defendant considered the judge's presence to be essential only during occasional, contested portions of the voir dire. During the uncontested portions of the voir dire, the defendant was satisfied with the judge's being absent and available, and with the proceedings being recorded on a tape cassette.[11]

## II

This conclusion, however, does not end our inquiry. Despite our conclusion that the defendant validly waived continuous judicial supervision of the voir dire in this case, we now hold, under our supervisory power over the courts, that henceforth the judge is required to remain on the bench throughout the voir dire of a criminal trial.[12]

As an appellate court, we possess an inherent supervisory authority over the administration of justice. *Pinsky* v. *Statewide Grievance Committee,* 216 Conn. 228, 232, 578 A.2d 1075 (1990); *State* v. *Holloway,* 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); *State* v. *Ross,* 208 Conn. 156, 158–59, 543 A.2d 284 (1988); *State* v. *Madera,* 198 Conn. 92, 99, 503 A.2d 136 (1985); *State* v. *Ubaldi,* 190 Conn. 559, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The standards that we set under this supervisory authority "are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law'

---

[11] Because we conclude that the defendant waived any right to continuous judicial supervision over the voir dire, and therefore that there was no error arising out of the judge's absence during the voir dire, we need not address whether such absence may be harmless error and whether it was harmless in this case.

[12] We do not decide whether the same rule applies to civil cases.

. . . ." *McNabb* v. *United States,* 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1942). Rather, the standards are flexible and are to be determined "in the interests of justice." *State* v. *Ross,* supra, 159.

A great deal is at stake in a criminal trial. The interests involved go beyond the private interests at stake in the ordinary civil case. They involve significant public interests. "The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *In re Winship,* 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1969). Indeed, the criminal jury trial has a role in protecting not only the liberty of the accused, but also the entire citizenry from overzealous or overreaching state authority. *Duncan* v. *Louisiana,* 391 U.S. 145, 156, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). In addition, the state has a valid and weighty interest in convicting the guilty. *Summerville* v. *Warden,* 229 Conn. 397, 427, 641 A.2d 1356 (1994); *State* v. *Sawyer,* 227 Conn. 566, 579, 630 A.2d 1064 (1993).

Moreover, prospective jurors ought to be made to feel that the criminal trial process is important to everyone involved, and that they are an essential part of the process. See American Bar Association, Standards Relating to Juror Use and Management (1983). The presence of the trial judge from the beginning of voir dire impresses upon the jury the gravity of the proceedings. The uninterrupted supervision of the proceedings by the judicial authority, mindful of everything that transpires in the courtroom, is an important part of the appearance that justice is being done in a criminal case.

In addition, the judge has significant responsibilities during the voir dire process of a criminal trial. The judge is charged with ruling on challenges based on the

purposefully discriminatory use of peremptory challenges. *Batson* v. *Kentucky,* supra, 476 U.S. 79; *State* v. *Holloway,* supra, 209 Conn. 636. Further, the judge ought to protect the legitimate privacy interests of prospective jurors. *Press Enterprise Co.* v. *Superior Court of California,* 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). In addition, of course, the judge has the responsibility of ruling on challenges for cause, and of determining the proper scope of questioning of venirepersons.

It may well be true that, in some instances, a trial judge can adequately discharge these responsibilities solely by responding when called by the parties, making appropriate inquiries, listening to the tape or reading the transcript, and initiating further inquiries, including inquiries of the venireperson, when necessary. Such a process may sufficiently protect the accuracy of the fact-finding process involved in making these determinations. We recognize, also, that permitting the judge to be absent from voir dire unless called by the parties may contribute to judicial economy and to the efficient use of scarce judicial resources by freeing the judge to work on opinions and perform other judicial duties.

It is also true, however, that firsthand observations ordinarily are a more reliable way to make the factual determinations required of the trial judge during criminal voir dire, particularly those sensitive determinations implicated in a *Batson*-type challenge. A transcript or tape cassette will not fully capture all of the nuances, such as facial expressions or bodily movements, that might appropriately be relevant in making those determinations. Furthermore, it may be that the judge who is continuously present at a criminal voir dire will more easily detect patterns of questioning and will more read-

ily appreciate the demographic composition of the venire than the judge who is asked to review selected playbacks.

On balance, we are persuaded that the significance of the interests at stake in a criminal trial, taken together with the greater likelihood of accuracy in fact-finding resulting from a judge's continuous presence, are sufficient to outweigh the competing interests, namely, other less reliable safeguards of accuracy and the interest in judicial economy, so as to require continuous judicial supervision during the voir dire of a criminal trial. Thus, just as we decided under our supervisory power that the state must provide a prima facie response if the defendant raises a *Batson* claim; *State v. Holloway*, supra, 209 Conn. 645–46; we now decide under our supervisory power that henceforth the trial judge must continuously be present to oversee voir dire in a criminal case. Because this requirement is imposed by this court pursuant to its supervisory powers, the requirement cannot be waived by either party in future criminal cases.

The judgment of the Appellate Court is reversed, and the case is remanded to that court for consideration of the remaining claims of the defendant.

In this opinion the other justices concurred.