******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY P. GOULD
(SC 19471)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille, Js.*

*Argued May 3—officially released August 16, 2016*

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney,

with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Pamela S. Nagy*, assistant public defender, and *Jasmine Gonzales Rose* filed a brief as amicus curiae.

*Opinion*

McDONALD, J. The dispositive issue in this certified appeal is whether a trial court's purportedly improper exclusion of a prospective juror for cause on the ground that he was "not able to speak and understand the English language" within the meaning of General Statutes § 51-217 (a) (3) constitutes per se reversible error. The defendant, Jeffrey P. Gould, appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction, in light of its conclusion that the trial court's improper exclusion of a venireperson on this basis was not prejudicial. The defendant contends that, because the assessment of the English language skills and accents of nonnative speakers may reflect implicit or unconscious bias relating to ancestry or national origin, the improper exclusion of a prospective juror on the basis of such factors should be deemed commensurate with the improper exclusion of a prospective juror on the basis of a suspect classification, which is subject to automatic reversal. We conclude that the Appellate Court properly determined that the trial court's excusal of the prospective juror for cause under § 51-217 (a) (3) was subject to reversal only upon a showing of prejudice.

The record reveals the following undisputed facts. The defendant was brought to trial on a charge of sexual assault in the first degree. During voir dire, an issue arose regarding the English proficiency of venireperson E,[1] whose juror application revealed a Hispanic surname and listed his ethnicity as Puerto Rican.[2] After E answered several preliminary questions, which revealed, among other things, that he had attended college before being employed as a machinist, the following colloquy ensued:

"[The Prosecutor]: Have you or anyone close to you ever been a victim of a crime?

"[E]: Yes.

"[The Prosecutor]: And are you comfortable telling me a little bit about that?

"[E]: Well, kind of—do you want to hear?

"[The Prosecutor]: If you're comfortable telling me, yeah, sure.

"[E]: Oh well, one time we are stopped by the police and they confused me by another person, and they like put something on me.

"[The Prosecutor]: A guy came and pulled something on you?

"[E]: Yes, kind of like that.

"[The Prosecutor]: Okay, and what did he pull on you?

"[E]: I think it was—there was after him one person and because he cannot get to that person, so he get

close to me and reached to my pocket without me knowing because I was sitting down. So, when the police came, that guy told me, hey this guy put something on you. That's it.

"[The Prosecutor]: Okay.

"The Court: If I can just interrupt for a moment? [Sir], English is not your first language is it?

"[E]: No.

"The Court: Do you have any difficulty understanding English?

"[E]: No.

"The Court: No?

"[E]: No, I understand very well.

"The Court: Okay, and you understood everything I said initially when I was talking to the audience out there when you were in the gallery; did you understand—

"[E]: Most of it, yeah, most of it.

"The Court: It's the most of it part that I'm a little worried about, which is why I asked and I apologize. It's important that you understand everything, because I never know—we never know beforehand what's going to be the most important part of the trial. I mean it's all important, so it's important that you understand everything that's said. Do you feel like you'll be able to understand everything that's said in the courtroom?

"[E]: I think so.

"The Court: Okay, you don't anticipate any problems understanding what people are saying?

"[E]: No, no, in fact I understand what's your point. I got a big accent.

"The Court: Okay.

"[E]: That when I talk, I know sometimes they tell me—

"The Court: No, no, I understand—I just want to— whenever anybody talks to me in an accent and it's not just Spanish, I often inquire whether they can understand English well enough to be a juror. So you're comfortable doing that and that's fine.

"[E]: Yes, yes."

After a further exchange with the prosecutor, E clarified that he was charged with a drug crime in connection with the incident in which a "guy put something on [him]," explaining that "the police say that they see me throwing something out of my body and they put charges on me." E acknowledged that he had failed to disclose the charges related to that incident on his juror questionnaire.

Defense counsel also questioned E about his ability to understand English:

"[Defense Counsel]: Okay. I know the judge touched on this a little bit, but is English your first language or not?

"[E]: No, Spanish.

"[Defense Counsel]: But you understand everything I said?

"[E]: Yes, of course."

After the voir dire of E concluded, the state challenged him for cause, claiming that "a good number of [E's] answers were not actually responsive to the questions that were being asked." In addition, the state asserted that E had failed to provide a full accounting of his criminal record on his juror questionnaire, suggesting that he either did not understand the form or intentionally had failed to disclose his criminal history, the latter of which would independently warrant disqualification. Defense counsel objected, citing, inter alia, E's college background and E's assurances that he understands English fully.

The trial court responded: "Here's the problem I have . . . . I don't think [E] can communicate with the other members of the jury. I had an extremely hard time understanding his answers. And while he may understand the language because he certainly said he did, I have real concerns about in a jury room whether he's going to be able to fully participate with the other members of the jury in their deliberations for a verdict because he's extremely difficult to understand. There were times—numerous times where I did not understand what [E] was saying, and I think it's related to English not being his first language. I mean I think he's—I've no reason to believe intellectually he's not capable, but I think the language barrier is a substantial one."

Defense counsel argued that he had understood everything E said, "other than . . . his mumbling," to which the trial judge responded, "[w]hich was often. . . . That's part of my point." Thereafter, the court ruled that it would excuse E for cause based on its view that "he has a significant language barrier that will prevent him from fully participating as a juror in this case."

The defendant's case proceeded to trial, and the jury found him guilty as charged. The court rendered judgment accordingly, from which the defendant appealed.

On appeal before the Appellate Court, the defendant claimed that the trial court improperly excused E for cause, and that the significant interests implicated required automatic reversal of the judgment of conviction. The Appellate Court, with one judge concurring,

affirmed the trial court's judgment. *State* v. *Gould*, 155 Conn. App. 392, 393, 109 A.3d 968 (2015). Describing the issue as one of first impression in Connecticut, the Appellate Court initially determined that the statutory mandate that "[a] person shall be disqualified to serve as a juror if such person . . . is not able to speak and understand the English language"; General Statutes § 51-217 (a) (3); requires, at a minimum, that a prospective juror "have sufficient language skills to understand the proceedings and resolve the factual issues presented at trial." *State* v. *Gould*, supra, 400. The Appellate Court underscored that, in making such an assessment, "trial courts must be cognizant of the need to avoid prejudices, conscious and unconscious, that are associated with assessing the English language skills of nonnative speakers." Id., 403. Ultimately, the Appellate Court concluded that the trial court had abused its discretion in excusing E because the record did not support its determination that E "would not be able to communicate with other jurors." Id., 403–404. The Appellate Court determined that his excusal was unjustified. Id., 406. Notwithstanding that determination, the Appellate Court held that the defendant was not entitled to a new trial because he had failed to demonstrate that he suffered any actual prejudice as a result of E's excusal. Id., 409.

In his concurring opinion, Judge Prescott acknowledged that he "share[d] the majority's recognition of the value and importance of promoting jury service by all qualified citizens regardless of their race, gender, color, creed or national origin," but disagreed with its conclusion that the trial court's excusal of E was improper. Id. Judge Prescott asserted that the "majority virtually ignore[d] or, at most, pa[id] lip service to, the long established, highly deferential standard of review regarding a trial court's determination regarding a juror's competence to serve." Id. Judge Prescott concluded that the trial court's determination that E lacked sufficient proficiency in English to satisfy the requirements of § 51-217 (a) (3) was a factual finding that, based on the cold record, was not clearly erroneous. Id., 416–17. Accordingly, Judge Prescott concluded that the trial court did not abuse its discretion in granting the state's challenge of E for cause. Id., 423.

We granted the defendant's petition for certification to appeal, limited to the issue of whether the Appellate Court properly concluded that the trial court's disqualification of E did not require reversal of the trial court's judgment. *State* v. *Gould*, 316 Conn. 912, 112 A.3d 174 (2015). The defendant contends that the improper excusal of E on the basis of his accent as a nonnative English speaker—which, according to the defendant, is "a personal, essentially immutable characteristic closely related to ancestry or national origin"—is tantamount to the improper exclusion of a prospective juror on the basis of race, which is prohibited under *Batson* v.

*Kentucky*, 476 U.S. 79, 96–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and its progeny. Accordingly, the defendant contends that, like a *Batson* violation, the improper excusal of a prospective juror for cause solely on the basis of his accent requires automatic reversal rather than the customary harmful error analysis applied to nonconstitutional claims relating to jury selection. In response, the state both contests the *Batson* analogy drawn by the defendant and seeks affirmance on the alternative ground set forth in Judge Prescott's concurring opinion.

Before turning to the merits, we make certain clarifications. First, at no point in the proceedings in this case has the defendant contended that the trial court's action violated the dictates of any provision of either the state constitution or the federal constitution. Rather, he has contended that this court should consider certain fundamental interests protected thereunder when determining whether the improper excusal of a prospective juror for lack of sufficient English proficiency requires automatic reversal. Second, we disagree that the record demonstrates that the trial court excused E solely because of his accent. We think it is fairer to say that, at a minimum, the trial court determined that E had a significant language barrier due to the combination of his accent, a tendency to mumble, and the imprecise nature of some of his responses. Indeed, before the Appellate Court, the defendant characterized the record as showing only that E " 'had more difficulty in speaking than someone for whom English is a first language . . . .' " *State* v. *Gould*, supra, 155 Conn. App. 399. With those clarifications in mind, we conclude that, even if we assume, without deciding, that the trial court abused its discretion in excusing E, the defendant nevertheless was not entitled to a new trial in the absence of proof that this decision prejudiced his right to an impartial jury.

"[A]n impartial *and* fairly chosen jury is the cornerstone of our criminal justice system." (Emphasis added; internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 630, 629 A.2d 1067 (1993). Thus, in making a determination as to a prospective juror's ability to serve, there are two sets of interests to consider: "the interests of the parties, namely, the defendant and the state; and . . . the interests of the prospective jurors." (Footnote omitted.) *State* v. *Patterson*, 230 Conn. 385, 392, 645 A.2d 535 (1994).

With respect to the defendant's interests, "the right to [a] jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin* v. *Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); see U.S. Const., amend. VI;[3] Conn. Const., art. I, § 19.[4] "Voir dire plays a critical function in assuring the criminal defendant that his [s]ixth [a]mendment right to an impartial jury will be honored."

*Rosales-Lopez* v. *United States*, 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981).

In addition, "jurors have a separate and independent interest in participating in the trial process . . . ." *State* v. *Patterson*, supra, 230 Conn. 393; see *Powers* v. *Ohio*, 499 U.S. 400, 406, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) ("[t]he opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system"). Although "[a]n individual juror does not have a right to sit on any particular petit jury"; *Powers* v. *Ohio*, supra, 409; "[a]ll persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination." *J.E.B.* v. *Alabama*, 511 U.S. 127, 141–42, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994); see U.S. Const., amend. XIV, § 1 (equal protection); Conn. Const., art. I, § 20 (same).

Turning to the issue before us, although the defendant's argument implicitly concedes that the improper exclusion of a juror for cause based on factors wholly unrelated to a suspect classification does not require automatic reversal, our appellate courts have not squarely addressed this issue. Nonetheless, our case law in a closely related context supports the general rule that a defendant is not entitled to a new trial in the absence of a showing of prejudice.[5] See *State* v. *Ross*, 269 Conn. 213, 238, 849 A.2d 648 (2004) (declining to "consider the merits of the trial court's rulings [denying] the defendant's for cause challenges because any error necessarily was harmless"); *State* v. *Esposito*, 223 Conn. 299, 312, 613 A.2d 242 (1992) (considering "impact the court's ruling had on the defendant at trial," after concluding that trial court should have granted defendant's challenge for cause); *State* v. *Pelletier*, 209 Conn. 564, 572–73, 552 A.2d 805 (1989) (assuming that trial court improperly denied defendant's challenge for cause, error was not prejudicial). Other jurisdictions, federal and state, universally require a showing of prejudice before setting aside a verdict on the basis of an improper exclusion of a prospective juror for cause.[6]

To demonstrate such prejudice, the defendant must show "that the rulings of the trial court resulted in a jury that could not judge his guilt impartially." *State* v. *Tucker*, supra, 226 Conn. 631; accord *State* v. *Marra*, 195 Conn. 421, 432, 489 A.2d 350 (1985). In determining whether the jury was impartial, the inquiry necessarily "must focus not on [the prospective juror who was excused], *but on the jurors who ultimately sat*." (Emphasis added.) *Ross* v. *Oklahoma*, 487 U.S. 81, 86, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988); see *State* v. *Tucker*, supra, 631 ("[w]e focus on those jurors who actually decided the defendant's fate rather than on those venirepersons who were excused for cause or

peremptorily"). Accordingly, the general rule is that an improper grant or denial of a for cause challenge is not prejudicial unless the defendant shows that the ruling resulted in an "identifiable, objectionable juror actually serv[ing] on the jury that decided the case . . . ." *State* v. *Ross*, supra, 269 Conn. 232; accord *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 639 n.20, 904 A.2d 149 (2006); but see *State* v. *Hill*, 196 Conn. 667, 672–73, 495 A.2d 669 (1985) (trial court's improper refusal to permit defense counsel to ask venirepersons about predisposition to attach greater or less credence to police officer testimony deprived defendant of right to impartial jury by precluding him from intelligently challenging such venirepersons for cause or peremptorily); *State* v. *Higgs*, 143 Conn. 138, 143–44, 120 A.2d 152 (1956) (same conclusion regarding trial court's improper refusal to permit defense counsel to ask venirepersons about racial prejudice).

Prejudice is assessed with reference to the jurors who convicted the defendant because "[t]he constitutional standard of fairness requires [only] that a defendant have a panel of impartial, indifferent jurors." (Internal quotation marks omitted.) *State* v. *Tucker*, supra, 226 Conn. 630; see *Hayes* v. *Missouri*, 120 U.S. 68, 71, 7 S. Ct. 350, 30 L. Ed. 578 (1887) ("The accused cannot complain if he is still tried by an impartial jury. He can demand nothing more."). "The right to challenge is the right to reject, not to select a juror" of the defendant's preference. (Internal quotation marks omitted.) *State* v. *Vitale*, 190 Conn. 219, 225, 460 A.2d 961 (1983). "A defendant has no constitutional or other right to the service of a particular juror. . . . [T]he exclusion of a single juror, even if improper, does not suggest any lack of impartiality on the part of those jurors in fact serving." (Citation omitted.) *United States* v. *Joseph*, 892 F.2d 118, 124 (D.C. Cir. 1989).

*Batson* is a limited exception to this rule. It requires automatic reversal of a conviction when the prosecution engages in purposeful discrimination by using a peremptory challenge to unlawfully exclude members of the defendant's race from the petit jury. See *Batson* v. *Kentucky*, supra, 476 U.S. 100. Exclusion of a person from the jury venire on account of race "violates a defendant's right to equal protection" when he is the same race of the excluded venireperson, "unconstitutionally discriminate[s] against the excluded juror," and "undermine[s] public confidence in the fairness of our system of justice." Id., 86–87. Because the exercise of peremptory challenges is "subject to the commands of the [e]qual [p]rotection [c]lause"; id., 89; the underlying rationale of *Batson* has been extended to other group classifications that trigger heightened scrutiny under a traditional equal protection analysis, including ancestry or national origin. See *State* v. *Rigual*, 256 Conn. 1, 10, 771 A.2d 939 (2001); see also *Hernandez* v. *New York*, 500 U.S. 352, 355, 361, 372, 111 S. Ct. 1859, 114 L. Ed.

2d 395 (1991) (acknowledging that use of peremptory challenges to exclude Latinos from jury solely on basis of their ethnic origin would violate equal protection clause, but concluding that state's proffered reasons for excusals were race-neutral). A defendant has standing to vindicate the equal protection rights of prospective jurors excluded from jury service, regardless of whether the defendant and the excluded venireperson share the same suspect classification. See *Powers* v. *Ohio*, supra, 499 U.S. 415–16; *State* v. *Rigual*, supra, 10–11 n.10.

We are not persuaded that the improper removal of a prospective juror for lack of sufficient English proficiency is akin to a *Batson* violation. Our court, and every other court to consider the issue, has held that discrimination on the basis of English proficiency for purposes of jury service passes constitutional muster. See *State* v. *Gibbs*, 254 Conn. 578, 597–600, 758 A.2d 327 (2000) (concluding that English proficiency requirement in § 51-217 [a] [3] did not violate equal protection clause of either federal or state constitution); see also id., 597–98 (collecting cases from other jurisdictions reaching similar conclusion). "It has long been accepted that the [federal] [c[onstitution does not forbid the [s]tates to prescribe relevant qualifications for their jurors." (Internal quotation marks omitted.) Id., 597. Even assuming the English proficiency requirement excludes a cognizable group of nonnative English speakers from jury service, we have recognized that "the state's interest in ensuring that jurors are capable of understanding the judicial proceedings is compelling, and the English proficiency requirement is narrowly tailored to serve that interest." Id., 599. Thus, whereas race could never be a legitimate basis on which to exclude a prospective juror; *Batson* v. *Kentucky*, supra, 476 U.S. 87 ("[a] person's race simply 'is unrelated to his fitness as a juror' "); English proficiency plainly is.[7]

*Batson* is distinguishable from the present case in two other respects. First, the *Batson* framework has been limited to peremptory challenges. See *United States* v. *Elliot*, 89 F.3d 1360, 1364–65 (8th Cir. 1996) ("*Batson* applies only to peremptory strikes. We know of no case that has extrapolated the *Batson* framework to for-cause strikes."), cert. denied, 519 U.S. 1118, 117 S. Ct. 963, 136 L. Ed. 2d 849 (1997); *United States* v. *Blackman*, 66 F.3d 1572, 1575 n.3 (11th Cir. 1995) ("no authority suggests *Batson* extends to the area of challenges for cause"), cert. denied, 517 U.S. 1126, 116 S. Ct. 1365, 134 L. Ed. 2d 531 (1996), cert. denied, 519 U.S. 967, 117 S. Ct. 393, 136 L. Ed. 2d 309 (1996). Second, *Batson* is concerned with purposeful discrimination in excluding members of a suspect class in jury selection. There is no claim in the present case that nonnative English speaking venirepersons were intentionally and systematically excluded from the venire; see, e.g., *Thiel* v. *Southern Pacific Co.*, 328 U.S. 217, 221–22, 225, 66

S. Ct. 984, 90 L. Ed. 1181 (1946) (reversing civil judgment because undisputed evidence demonstrated systematic exclusion of daily wage earners from jury lists); or that the prosecution levied "a 'pattern' of strikes" against such persons giving rise to an inference of purposeful discrimination. *Batson* v. *Kentucky*, supra, 476 U.S. 97. Even under the Appellate Court's view of the facts giving rise to the purported erroneous excusal of E, the trial court's action can only be characterized as a mistaken, good faith application of the English proficiency requirement. See *United States* v. *Abbey*, Docket No. 97-1284, 1998 WL 321204, *6 (10th Cir. June 5, 1998) (rejecting argument that "a trial court's abuse of discretion in striking a potential juror for cause" on basis of juror's purported inability to speak English, "in and of itself, is sufficient to establish a prima facie violation of either the [f]ifth or the [s]ixth [a]mendment"). Although the defendant raises the specter of implied or unconscious bias, that concern finds no support in *Batson* and its progeny.

Indeed, every jurisdiction to consider this issue has concluded that the improper exclusion of a prospective juror for lack of sufficient English proficiency is subject to reversal only if prejudice resulted from the error. See id.; *State* v. *Crouch*, 107 N.W. 173, 174 (Iowa 1906); see also *United States* v. *Pineda*, 743 F.3d 213, 217–19 (7th Cir. 2014) (even assuming trial court abused its discretion in removing *seated* juror for cause based on lack of sufficient English proficiency after commencement of trial but before deliberations, error was harmless); *State* v. *Berrios*, 788 N.W.2d 135, 140–41 (Minn. App. 2010) (same).

The defendant's argument that the improper exclusion of a prospective juror on this basis should be reversible error even without a showing of prejudice to avoid undermining public confidence in the fairness and integrity of our judicial system, is effectively an argument for structural error. See *Arizona* v. *Fulminante*, 499 U.S. 279, 309–10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). We have observed, however, that "there is a 'very limited class of cases' involving error that is 'structural,' that is to say, error that transcends the criminal process. *Johnson* v. *United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) . . . ." *State* v. *Lopez*, 271 Conn. 724, 733, 859 A.2d 898 (2004). Structural errors have not been recognized outside the realm of constitutional violations except in extraordinary circumstances. See, e.g., *Nguyen* v. *United States*, 539 U.S. 69, 79–83, 123 S. Ct. 2130, 156 L. Ed. 2d 64 (2003) (structural error when appeals panel was improperly constituted in violation of statutory requirement and thus did not have authority to decide appeal). Accordingly, we decline to extend the limited class of cases involving structural defects to the circumstances implicated here.

Finally, to the extent that the authorities cited by the defendant and the amicus suggest that a translator should be provided to prevent the underrepresentation of minorities on juries due to the English proficiency requirement, their contention is one that is more appropriately addressed to the legislature rather than this court. See, e.g., General Statutes § 51-217 (a) (1) (excepting deafness and hearing impairment from disqualification on basis of exhibiting quality that will impair capacity to serve as juror); but see *State* v. *Gibbs*, supra, 254 Conn. 599 (recognizing that "[t]he enormous additional expense that the state would incur were it required to provide interpreters for jurors, and the impact on the functioning of the jury, particularly during deliberation . . . represents a compelling state interest").

Despite our resolution of the issue in the present case, we agree with the Appellate Court that our trial courts must be vigilant in "avoid[ing] prejudices, conscious and unconscious, that are associated with assessing the English language skills of nonnative speakers." *State* v. *Gould*, supra, 155 Conn. App. 403; see also id., 409 (*Prescott*, *J.*, concurring). Our Judicial Branch has been proactive in addressing the issue of limited English proficiency by establishing the Committee on Limited English Proficiency and charging it with "eliminating barriers to facilities, processes and information that are faced by individuals with limited English proficiency." State of Connecticut, Judicial Branch, Language Access Plan (Rev. July 2015), p. 3, available at http://www.jud.ct.gov/LEP/LanguageAccessPlan.pdf (last visited August 2, 2016). As a result, limited English proficiency "training has . . . been provided to all [j]udges . . . [and] has also been incorporated into the new judge orientation provided to all newly appointed judges."[8] Id., p.4. Indeed, our opinion should not be read to preclude the possibility that English language proficiency or an accent indicative of being a nonnative speaker could serve as a proxy or pretext for unlawful discrimination on the basis of ancestry, national origin, or race in another context, particularly where the exclusion is made "without regard to the particular circumstances of the trial or the individual responses of the jurors . . . ." *Hernandez* v. *New York*, supra, 500 U.S. 372; see id., 371 ("[i]t may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis"). Moreover, should a systemic pattern of improper exclusions on the basis of lack of English proficiency arise that demonstrates an implied bias against nonnative speakers, this court may exercise its inherent supervisory authority. In the present case, the defendant makes no such claim nor is there any evidence of such a pattern before this court.

Having concluded that the improper removal of E did not entitle the defendant to a new trial in the absence of a showing of prejudice, the dispositive question is whether the defendant has met his burden of showing that he was deprived of an impartial jury. The defendant has conceded that he made no claim of prejudice or an unfair trial in the trial court and cannot do so now. Indeed, the defendant has provided no record from which such a conclusion could be drawn. Accordingly, the Appellate Court properly concluded that the defendant is not entitled to a new trial.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA, ROBINSON and VERTEFEUILLE, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille. Although Chief Justice Rogers was not present when the case was argued before the court, she has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] To protect the privacy of the venireperson discussed in this opinion, we refer to him only by his first initial. See *State* v. *Hodge*, 248 Conn. 207, 229 n.25, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999).

[2] The defendant has not made E's juror questionnaire part of the appellate record. Nonetheless, we accept for purposes of this appeal the defendant's representations as to certain statements therein, which the state has not contested. We also note that we provide only a selected portion of the approximately 100 questions and answers from the voir dire of E, as our analysis assumes, without deciding, that E improperly was excused for cause.

[3] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." This guarantee has been made applicable to the states through the due process clause of the fourteenth amendment. See *Duncan* v. *Louisiana*, 391 U.S. 145, 148–49, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

[4] Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides in relevant part: "The right of trial by jury shall remain inviolate . . . . In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[5] We note that, although some of our cases have stated the standard in the disjunctive, i.e., clear abuse of discretion *or* harmful prejudice, this court nonetheless consistently has required the defendant to show prejudice to obtain a new trial. See, e.g., *State* v. *Ross*, 269 Conn. 213, 232–33, 241, 849 A.2d 648 (2004); *State* v. *Anthony*, 172 Conn. 172, 175, 177, 374 A.2d 156 (1976); *State* v. *Smith*, 10 Conn. App. 624, 635–36, 638, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987); see also *State* v. *Crafts*, 226 Conn. 237, 259, 627 A.2d 877 (1993) ("[o]n appeal . . . we may reverse the trial court's denial of a request to excuse a juror for cause only upon a showing of abuse of discretion resulting in prejudice to one of the parties").

[6] See *Northern Pacific Railroad Co.* v. *Herbert*, 116 U.S. 642, 646, 6 S. Ct. 590, 29 L. Ed. 755 (1886); *Hooks* v. *Workman*, 689 F.3d 1148, 1176 (10th Cir. 2012); *United States* v. *Lindsey*, 634 F.3d 541, 553–54 (9th Cir.), cert. denied, 563 U.S. 1000, 131 S. Ct. 2475, 179 L. Ed. 2d 1232 (2011); *United States* v. *Perez*, 387 F.3d 201, 207–208 (2d Cir. 2004); *United States* v. *Brooks*, 175 F.3d 605, 606 (8th Cir. 1999), cert. denied, 528 U.S. 1119, 120 S. Ct. 941, 145 L. Ed. 2d 818 (2000); *United States* v. *Gonzalez-Balderas*, 11 F.3d 1218, 1222 (5th Cir.), cert. denied, 511 U.S. 1129, 114 S. Ct. 2138, 128 L. Ed. 2d 867 (1994); *United States* v. *Joseph*, 892 F.2d 118, 124 (D.C. Cir. 1989); *Dailey* v. *State*, 828 So. 2d 340, 343–44 (Ala. 2001); *State* v. *Sanders*, 92 Ohio St. 3d 245, 249, 750 N.E.2d 90 (2001), cert. denied, 535 U.S. 1036, 122 S. Ct.

1795, 152 L. Ed. 2d 653 (2002); *State* v. *Calloway*, 157 Vt. 217, 220–21, 596 A.2d 368 (1991); see also *Jones* v. *State*, 982 S.W.2d 386, 392 (Tex. Crim. App. 1998) (en banc) (collecting cases), cert. denied, 528 U.S. 985, 120 S. Ct. 444, 145 L. Ed. 2d 362 (1999); *State* v. *Mendoza*, 227 Wis. 2d 838, 863 n.15, 596 N.W.2d 736 (1999) (collecting cases).

[7] Even the commentators cited by the defendant, who assert that a relationship between foreign language or accent and national origin should be recognized for purposes of federal employment discrimination, acknowledge that employers would be able to overcome the presumption of discrimination if the English proficiency requirement for a particular job was related to a legitimate business purpose. As we have previously explained, legitimate reasons exist for such a requirement for jury service. See *State* v. *Gibbs*, supra, 254 Conn. 598–99.

[8] We consider the trial judge's comment that "whenever anybody talks to [him] in an accent and . . . not just [in] Spanish, [he] often inquire[s] whether they can understand English well enough to be a juror," to be an inartful one. The judge may simply have been intending to convey to E that he was not being singled out. The judicial authorities of this state assuredly do not condone the disparate treatment of persons who are nonnative English speakers. We note, moreover, that accents of persons for whom English is their first language can present their own difficulties in comprehension, such as regional accents within the United States or English speakers from foreign countries (e.g., Scottish brogue).

———————————————